**STATE FARM LLOYDS, INC., Appellant,**

v.

**Robert POLASEK and Shirley Polasek d/b/a R & S Video, Appellees.**

No. 04–92–00100–CV.

Court of Appeals of Texas, San Antonio.

Dec. 16, 1992.

Rehearing Denied Feb. 16, 1993.

Carol A. Jenson, David L. Treat, Jones, Kurth & Treat, San Antonio, for appellant.

Scott R. Donaho, Kirk Dockery, Donaho & Dockery, P.C., Floresville, for appellees.

Before PEEPLES, BIERY and GARCIA, JJ.

## OPINION

PEEPLES, Justice.

In this arson and bad faith case State Farm appeals a judgment against it for actual and exemplary damages. In 1990 a fire destroyed the Polaseks' video rental business, which State Farm insured. State Farm denied the Polaseks' insurance claim on the ground that the fire was caused by arson. The Polaseks filed suit, and ultimately a jury found that the Polaseks had not committed arson and that State Farm acted in bad faith because it did not have a reasonable basis for denying the claim. The jury found damages of $40,000 for property loss and $200,000 for mental anguish, and assessed $500,000 as exemplary damages. We affirm the judgment for property loss and attorney's fees based upon contract, but as to the bad faith recovery for mental anguish and exemplary damages we reverse and render judgment that the Polaseks take nothing.

The liability issues in this case fall into two categories: (1) whether State Farm

established arson and misrepresentation,[1] which were its affirmative defenses to the Polaseks' suit to recover on the insurance policy; and (2) whether the Polaseks established that State Farm denied their insurance claim in bad faith.[2] The jury found all issues in the Polaseks' favor.

## I.

The jury refused to find that the Polaseks had set the fire or that they had misrepresented facts (i.e. that they had not set the fire) when they made their insurance claim. State Farm contends that it established a "yes" answer to the arson question as a matter of law, and that the jury's "no" finding is so against the weight of the evidence as to be manifestly unjust. We review these arguments under well-settled standards that need not be repeated here. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ To establish arson as a defense to a civil suit for insurance proceeds, the insurer must prove by a preponderance of the evidence that the insured set the fire or caused it to be set. *St. Paul Guardian Ins. Co. v. Luker,* 801 S.W.2d 614, 622 (Tex.App.—Texarkana 1990, no writ); *Texas Gen. Indem. Co. v. Speakman,* 736 S.W.2d 874, 880 (Tex.App.—Dallas 1987, no writ); *Bufkin v. Texas Farm Bureau Mut. Ins. Co.,* 658 S.W.2d 317, 320 (Tex.App.—Tyler 1983, no writ). Because arson is usually planned and committed in secrecy to avoid detection,[3] these elements may be proved by circumstantial evidence. *Luker,* 801 S.W.2d at 622; *Speakman,* 736 S.W.2d at 880; *Bufkin,* 658 S.W.2d at 321; *Garrett v. Standard Fire Ins. Co.,* 541 S.W.2d 635, 638 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). Ordinarily the circumstantial proof that the insured committed arson consists of evidence that the fire had an incendiary origin and that the insured had an opportunity and a motive to set it. *See generally* Charles T. Smith, Note, *Arson—Defense of a Fraudulent Property Insurance Claim,* 35 DRAKE L.REV. 831 (1986–1987).

■ The Polaseks have not suggested that the fire was caused by accident, or by natural causes, or that it did not have an incendiary origin. There was considerable evidence that the fire had an incendiary origin. Burn patterns showed the presence of accelerants in two places. Laboratory

1. The arson and misrepresentation issues are essentially the same. The misrepresentation issue involved State Farm's contention that the Polaseks misrepresented whether they had set the fire.

2. The jury also found that State Farm committed a deceptive trade practice. The gist of that theory is that State Farm denied the insurance claim without a reasonable basis. Because the DTPA count involves the same inquiry as the bad faith count, we consider the bad faith and DTPA claims together.

3. In the last two decades arson has become a national problem. A Justice Department report describes how arson is not only a property crime but also a threat to persons, jobs, and incomes:

> Since the early 1970s, the United States has experienced a particularly troublesome outbreak of arson. The U.S. Fire Administration estimates that arsons grew 25 percent each year through the 1970s, until they exceeded 800,000 in 1981, the most recent year for which figures are available. The cost per year: 974 deaths, 3,873 injuries, and a direct loss of $1.99 billion. Estimates of indirect losses—i.e., the wages and taxes foregone because of arson—range from $6 billion to $10 billion per year.
> ... Over 400 buildings are damaged by arson each day.

> .  .  .  .  .

> The magnitude of these figures sets arson apart from the "property crimes" with which it is usually grouped. Arson differs in another respect as well: it destroys the property, along with jobs, incomes, and tax revenues. NATIONAL INSTITUTE OF JUSTICE, U.S. DEP'T OF JUSTICE, MANAGING ARSON CONTROL SYSTEMS 1 (EXECUTIVE SUMMARY) (DANIEL FORD ED., OCT. 1984). Arson also destroys neighborhoods and causes urban blight:
>> The impact on society as a whole was obvious and most noticeable in the deterioration of inner cities throughout the United States. It simply became more profitable for an urban landlord to burn his building for insurance proceeds than to maintain it as rental property.

> Kevin Kavanagh, *Proof of Arson Fraud in Civil Litigation,* 35 FED'N OF INS. COUNSEL Q. 311, 311–12 (Spring 1985).

tests found traces of kerosene. No accidental cause was apparent; electricity and heaters were not present in the areas where the fire started. There was no evidence of forced entry into the building; this indicated that someone with a key might have been involved.

The Polaseks argued instead that they had nothing to do with the fire, and the jury obviously believed them. The evidence on this issue—whether the Polaseks set the fire or caused it to be set—was conflicting, and the jury's finding is within the evidence. There was evidence that the Polaseks had the opportunity to set the fire. Mrs. Polasek was the last person on the premises that night, no one else had a key, and the lights were not turned on, as they had been before. There was also evidence that the Polaseks had a motive for destroying the store for the insurance proceeds. The business had not been profitable; it owed a $6500 note, which fell due several days after the fire. The company had only $365 in the bank. The Polaseks had been paying operating expenses from their personal funds. They had borrowed money and had been late paying the rent.

There was some contrary evidence on these issues. The Polaseks could have borrowed money from several sources to pay the $6500 note and to meet their other financial obligations, though that would simply have substituted one creditor for another. Income tax returns and other financial records, construed favorably to the verdict, showed that the Polaseks' financial situation was reasonably stable, although this was a hotly disputed issue.

All this evidence presented a fact issue on which State Farm had the burden of proof. We cannot say that the evidence compelled the jury to inculpate the Polaseks. Applying the appropriate standards, we hold that the evidence did not establish as a matter of law that the Polaseks set the fire or misrepresented facts about the fire, and that the jury's failure to find arson and misrepresentation is not so contrary to the weight of the evidence to be manifestly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635–36 (Tex.1986).

We therefore uphold the jury's failure to find that the Polaseks committed arson, which means that they prevail in their suit on the insurance contract.

## II.

■ The Polaseks' bad faith cause of action is not satisfied by proof that they did not commit arson. It is not satisfied by proof that State Farm should have paid their claim, or that State Farm acted unreasonably in denying their claim. Instead their bad faith cause of action required proof of a negative: that *no reasonable basis existed* for denying, or delaying payment of, their insurance claim. The plaintiff in a bad faith case must prove that the insurer had "no reasonable basis" for denying the claim or delaying payment, or that it failed to determine whether there was "any reasonable basis" for denying or delaying payment. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). He must establish "the *absence of a reasonable basis* for denying or delaying payment of the benefits of the policy" and that the carrier knew or should have known that there was no reasonable basis for denying or delaying payment. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988) (emphasis added). Under the bad faith cause of action, said the *Aranda* court, "carriers will maintain the right to deny invalid or questionable claims and *will not be subject to liability for an erroneous denial of a claim.*" *Id.* (emphasis added). Thus the bad faith cause of action requires much more demanding proof than the suit on the insurance policy.

■ The cases reveal some confusion about the proper approach for assessing the legal sufficiency of a bad faith finding. In deciding whether there is legally sufficient evidence of a cause of action, we consider only the evidence supporting the verdict and disregard evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). But courts do not disregard *undisputed* evidence. In effect, State Farm's no-evidence point contends that there is undisputed evidence

that refutes the Polaseks' case in chief—that is, undisputed evidence that a reasonable basis existed for denying the Polasek's claim.

■■■ A no-evidence point will be sustained when the record establishes conclusively the opposite of a vital fact. *Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 363–64 (1960). When evidence concerning a vital fact is uncontradicted and proven conclusively, its effect is a question of law and there is no issue for the jury. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971); *Wright v. Vernon Compress Co.,* 156 Tex. 474, 296 S.W.2d 517, 523 (1956); *Schultz v. Shatto,* 150 Tex. 130, 237 S.W.2d 609, 615 (1951); *Clark v. National Life & Acc. Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820, 822 (1947). When reasonable minds can draw only one conclusion about the vital fact, there is no jury issue and an instructed verdict is proper. *Vance v. My Apartment Steak House,* 677 S.W.2d 480, 483 (Tex.1984); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *Najera v. Great Atl. & Pac. Tea Co.,* 146 Tex. 367, 207 S.W.2d 365, 367 (1948); 4 McDonald's Texas Civil Practice § 21.52, at 136 (1992).

■■■ We find the supreme court's decision in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981), instructive on this point. Before *Burk Royalty,* appellate courts had set aside exemplary damage verdicts, which require a finding of an entire want of care, if there was evidence of "some care." The court in *Burk Royalty* noted that refuting "some care" was an impossible burden because almost anything could constitute "some care." The court also held that this practice violated the no-evidence standard of appellate review. "The jury, after all, does not have to believe evidence that 'some care' was exercised." *Id.* at 921. A finding of an entire want of care suggests the jury did not believe some care was exercised. Similarly, in bad faith cases if it is disputed wheth-

er there was any reasonable basis in existence to support denial of the claim, a jury issue is present. But where there is *undisputed* evidence that a reasonable basis existed for denying an insurance claim, the bad faith cause of action is defeated as a matter of law. That is the meaning of the cases cited above and the substantive elements of the bad faith cause of action. In deciding whether there was an entire want of care, the trier of fact considers the entire record and weighs the evidence. In deciding whether a reasonable basis existed for denying an insurance claim, the trier does not weigh conflicting evidence; it decides whether the evidence existed and whether, standing alone, it constituted a reasonable ground for denying the claim.

Some cases hold that when the record shows that the insurer possessed evidence reasonably showing that the insured's claim might not be valid, the bad faith action is not viable as a matter of law. *See St. Paul Lloyd's Ins. Co. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *St. Paul Guardian Life Ins. Co. v. Luker,* 801 S.W.2d 614, 618 (Tex.App.—Texarkana 1990, no writ); *Millers Cas. Ins. Co. v. Lyons,* 798 S.W.2d 339, 343–44 (Tex.App.—Eastland 1990, writ granted); *National Union Fire Ins. Co. v. Hudson Energy Co.,* 780 S.W.2d 417, 426–27 (Tex.App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991); *Fuentes v. Texas Employers' Ins. Ass'n,* 757 S.W.2d 31, 33–34 (Tex. App.—San Antonio 1988, no writ).

Under these authorities, it is not enough for the insured to show that the insurer should have known to pay the claim, or that there were other facts suggesting the claim was valid. The insured must show that *no reasonable basis existed* for denying the claim. *Aranda,* 748 S.W.2d at 213; *Arnold,* 725 S.W.2d at 167. This means that the insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. In essence, the insured must prove a negative because one element of the cause of action is "the absence of a reasonable basis." *Aranda,* 748 S.W.2d at 213. Justice

Grant summarized the matter well in *Luker:*

This determination to deny the claim is not to be based on the insurer's success or failure in court on liability for the claim. The denial may be erroneous and still be in good faith if it is based upon the information which was available to the insurer at the time of the denial and which supported the denial of the claim. When there is a bona fide controversy, the insurer has a right to have its day in court and let the jury determine each witness's truthfulness.

*Luker*, 801 S.W.2d at 621–22. In other words, if a reasonable basis exists for questioning the insurance claim, the insurer may deny it and litigate the matter without also facing a bad faith claim.

Other courts have held that the inquiry is whether there is "some evidence" that there was not a reasonable basis for the denial. *See Commonwealth Lloyd's Ins. Co. v. Thomas*, 825 S.W.2d 135, 144 (Tex. App.—Dallas 1992, no writ); *State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 598 (Tex.App.—El Paso 1991, writ denied); *Automobile Ins. Co. v. Davila*, 805 S.W.2d 897, 905–06 (Tex.App.—Corpus Christi 1991, writ denied); *National Union Fire Ins. Co. v. Dominguez*, 793 S.W.2d 66, 70 (Tex.App.—El Paso 1990, writ granted); *Allied Gen. Agency, Inc. v. Moody*, 788 S.W.2d 601, 607 (Tex.App.—Dallas 1990, writ granted).

■ In line with these decisions, the Polaseks suggest that under the rules for reviewing the legal sufficiency of a jury finding, we must disregard all the evidence supporting State Farm's decision to deny the claim. That is a correct statement of the general no-evidence rule but a complete misstatement of the substantive proof required for the bad faith cause of action. And it fails to reckon with the undisputed-evidence cases. In a bad-faith action, the issue is whether there was evidence in existence before State Farm; the issue is not whether State Farm correctly evaluated the evidence before it. Therefore under the no-evidence standard of review we do not disregard the evidence that was indis-putably before State Farm when it denied the claim. Courts and juries do not weigh the conflicting evidence that was before the insurer; they decide *whether evidence existed* to justify denial of the claim.

■ At bottom, the issue is whether the plaintiff must show that there was no reasonable basis for denying the claim, or simply produce some evidence of unreasonableness. We think the former approach—applied in *Fong Chun Huang, Luker, Lyons, Hudson Energy*, and *Fuentes*—is consistent with the supreme court's statement of the cause of action, which requires the plaintiff to refute the existence of any reasonable basis for denying the claim.

In *Fong Chun Huang* the court reversed a bad faith judgment for the insured based on a jury verdict because the insurer "presented a reasonable fact question as to whether the fire was set by Fong or someone paid by Fong." Stating that the insurer "conclusively established that a reasonable insurer under similar circumstances would have denied Fong's claim," the court rendered a take-nothing judgment on the bad faith claim, but affirmed the judgment for contract damages. 808 S.W.2d at 526. In *Luker* the court held that even though there was conflicting evidence of arson by the insured when the insurer denied the claim, the evidence that there was no reasonable basis for denying the claim was factually insufficient. 801 S.W.2d at 620–22. In *Lyons* the court held that there was no evidence that the insurer lacked a reasonable basis for denying the claim; in addition, the court held that the record conclusively established that a reasonable insurer would have denied the claim. 798 S.W.2d at 343. In *Hudson Energy* the court disallowed a bad faith recovery based on a jury verdict because the evidence presented "reasonable fact question[s]" of coverage. 780 S.W.2d at 426. Such issues, said the court, established that a good faith legal controversy existed, which gave the insurer "just cause for litigating." *Id.* at 427. Similarly, when a claimant's pleadings showed that the workers' compensation carrier denied his claim on the basis of a medical opinion, the trial court properly

rendered a take-nothing summary judgment. *Fuentes,* 757 S.W.2d at 33–34. While such a claimant might prevail on the merits in his compensation case, as a matter of law the medical opinion constituted a reasonable basis for denying the claim, which precluded the bad faith cause of action.

In *Fong Chun Huang, Luker,* and *Hudson Energy,* the courts said that *if a bona fide controversy existed* the insurer was entitled to deny or delay payment and take the issue to court and is not liable for a bad faith failure to pay the claim promptly. *See Fong Chun Huang,* 808 S.W.2d at 526; *Luker,* 801 S.W.2d at 618, 621–22; *Hudson Energy,* 780 S.W.2d at 426. Thus the jury in a bad faith suit does not simply decide how it would have resolved the controversy or how a reasonable insurer would have resolved it; the jury must decide whether no reasonable basis existed for denying the claim. Trial courts adjudicate cases every day in which one side wins and the other loses, but that does not mean the loser had no reasonable basis for taking the case to court. This is the only meaning of the supreme court's statement in *Aranda* that insurers can safely deny "invalid or questionable claims" and they "will not be subject to liability for an erroneous denial of a claim." *See Aranda,* 748 S.W.2d at 213; *Luker,* 801 S.W.2d at 621–22; *Fuentes,* 757 S.W.2d at 33.

We think the "some evidence" cases have not correctly interpreted the nature of the bad faith cause of action set forth in *Arnold* and *Aranda,* in which the insured must negate the existence of a reasonable basis for denying or delaying payment. In *Thomas,* for example, the court said: "The jury heard evidence that Commonwealth's suspicion of arson was unfounded and unreasonable." 825 S.W.2d at 144. But whether the insurer's suspicion of arson was, in the jury's view, unreasonable and unfounded is not the issue in a bad faith case; the issue is whether a reasonable basis existed. Under *Aranda* the issue is whether there was a reasonable basis, and this inquiry cannot be resolved by looking at the insured's evidence and deciding that

the insurer should have believed it instead of other evidence. In *Davila* the jury and appellate court simply canvassed the evidence before the insurer and declared there was some evidence that the insurer had no reasonable basis for denying the claim. 805 S.W.2d at 905–06. The court in *Dominguez* seems to have confused two distinct and different questions: whether there was evidence that "a reasonable insurer under similar circumstances would not have denied the claim," and whether there was no reasonable basis for denying the claim. 793 S.W.2d at 70. As we have stated, the two inquiries are different; the latter question—whether a reasonable basis existed— is the core issue under *Arnold* and *Aranda.* In *Moody* the court dealt with the issue in one sentence and said there was "some evidence" to support the bad faith finding. 788 S.W.2d at 607. In *Zubiate,* the court seemed to believe that the issue was whether the insurer "was unreasonable." 808 S.W.2d at 598. Similarly, in *Guajardo v. Liberty Mut. Ins. Co.,* 831 S.W.2d 358 (Tex.App.—Corpus Christi 1992, writ denied), the court said that when an insurer relies on an expert opinion, if strong opinions to the contrary make the first opinion questionable, the evidence may raise a jury question as to whether the first opinion was a reasonable basis for denying a claim. *Id.* at 365.

It bears repeating that our assessment of the legal sufficiency of the Polaseks' *bad faith cause of action* differs from our review of the *arson defense* to their contract cause of action. Concerning State Farm's arson defense to the suit on the insurance contract, the issue was whether the Polaseks set the fire. Here the jury failed to find that they did, and we have upheld the jury's answer. But the issue in the bad faith suit is not whether the Polaseks set the fire, or whether a reasonable insurer would have decided that they did nor did not set it; the issue is whether State Farm had before it evidence reasonably suggesting that they did. The issue in the bad faith case is not whether the factfinder believes the evidence that State Farm believed when it denied the claim; the issue is whether such evidence

existed. If the factfinder could simply disagree with the insurer's assessment of such evidence in the bad faith action, the insurer would be held liable *in tort* for its erroneous denial of the claim. The supreme court in *Aranda* assured us that this would not happen.

■ Bad faith counts are now routinely pleaded in suits on insurance contracts. The supreme court in *Aranda* did not intend this result; it did not intend to convert first-party insurance cases into tort cases. It simply gave a tort remedy for the exceptional case in which the insurer denies or delays payment even though no reasonable basis for that decision exists. Courts should be careful to ensure that the bad faith action is reserved for cases of flagrant denial or delay of payment where no reasonable basis existed, and not for mere unreasonable denial or delay.

■ We recognize that under *Aranda* and *Arnold* the basis for denying the claim must be reasonable. But this does not authorize the trier of fact to second-guess the insurer about reasonableness. And it does not authorize the trier to decide whether the insurer acted reasonably. It means that the basis for denying or delaying payment must have some substance to it; it cannot be fanciful or flimsy. Not just any asserted basis will suffice. A scintilla of evidence suggesting arson would not be enough. But if the circumstantial evidence before the insurer reasonably suggests that the insured may have committed arson, there is no bad faith cause of action, even though the jury would easily have resolved the issue in the insured's favor.

■ There was ample evidence that a reasonable basis existed for denying the Polasek's claim. In assessing whether State Farm had a reasonable basis for denying the claim on grounds of arson, we consider the evidence before State Farm at the time it handled the claim. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). With this in mind, we review the evidence before State Farm at that time and conclude that several bits of evidence constituted a reasonable basis for denying the claim. The jury was not im-

pressed with the *weight* of this evidence as proof that two individuals should be branded as arsonists. But its *existence* was undisputed and was not proved solely by interested witnesses. *See Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989); *Collora v. Navarro*, 574 S.W.2d 65, 69 (Tex.1978); *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969).

Investigation strongly suggested that the fire had an incendiary origin: burn patterns showed accelerants had been present in two different areas; laboratory tests confirmed that kerosene had been poured on the carpeting; no accidental cause, such as electrical shorting, was apparent; no forced entry into the store was shown, which tended to rule out vandalism; the fire was concentrated under a counter and in the tape storage area, where it burned from the floor up, even though there was no source of heat on the floor.

Investigation also suggested that the Polaseks had the opportunity to start the fire and had a motive for doing so. Concerning opportunity, Mrs. Polasek was the last person on the premises that night; the lights were not turned on, which was contrary to practice; the Polaseks lived a short drive from the premises; no one else was known to have a key.

Concerning motive, the store was marginally profitable, at best; a $6500 note for the video tapes was due five days after the fire, and the Polaseks had only $365 in the company bank account; the Polaseks had borrowed money and had paid some operating costs from personal funds and not from business cash flow; they had been late paying the rent; Mr. Polasek removed an uninsured air compressor from the premises on the day of the fire.

When State Farm decided whether arson by the Polaseks may have caused the fire, it was entitled to assess the evidence in light of the substantive law of arson stated above, which permits an arson finding based on circumstantial evidence. We hold that as a matter of law, a reasonable basis existed for denying the claim.

A bad faith action may rest on proof that the insurer had no reasonable basis for denying the claim or delaying payment *or* that it failed to determine whether there was any reasonable basis for denying or delaying payment. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). Relying on the second part of the *Arnold* cause of action, the Polaseks argue that State Farm *failed to determine* whether there was a reasonable basis for denying their claim. They argue, for example, that State Farm did not talk to persons who would have loaned them money to pay their debts.

State Farm did not simply deny the claim without investigating; it investigated the circumstances surrounding the fire. In reality, the Polaseks suggest that an insurer has a duty to leave no stone unturned. Apparently, their position is that if there is evidence of avenues that the insurer did not investigate (such as learning whether there were sources of loans available to the Polaseks), there is a jury issue whether the insurer breached its duty to investigate. We reject this contention. Even the most thorough investigation must stop somewhere; there is always something else the investigators could have done. The cases have not upheld bad faith judgments for failure to investigate when the insurer simply failed to pursue every lead. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 598 (Tex.App.—El Paso 1991, writ denied) (insurer denied claim without investigating accident scene); *Beacon Nat'l Ins. Co. v. Reynolds,* 799 S.W.2d 390, 398 (Tex.App.—Fort Worth 1990, writ denied) (insurer denied claim without investigation; file contained no records of investigation by adjuster).

The undisputed evidence before State Farm when it considered and denied the Polaseks' claim was more than sufficient to make out a circumstantial case of arson. We hold that as a matter of law State Farm had a reasonable basis for denying the claim even though the jury later decided that State Farm should have believed contrary evidence and paid the claim. We reverse the portion of the judgment awarding mental anguish damages and exemplary damages for bad faith, and render judgment that the Polaseks take nothing on their bad faith cause of action.

### III.

Two other issues remain. State Farm contends that the court should have changed venue to another county under Tex.R.Civ.P. 257(c) because several prominent citizens in Wilson County were listed to testify for the Polaseks. At trial, after mentioning its motion to change venue and presenting affidavits, State Farm did not pursue the matter to a clear ruling. The venue contention has therefore been waived. Tex.R.App.P. 52(a).

State Farm also argues that counsel for the Polaseks made incurably harmful jury argument. Some of the argument was indeed improper, but State Farm's counsel did not object. Therefore its burden in this court is to show that the argument could not have been cured. *See Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979); *Texas Employers' Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 863–64 (Tex.App.—San Antonio 1990, writ denied). The arguments were not incurable and therefore State Farm waived error by failing to object.

We reverse the bad faith portion of the judgment and render judgment that the Polaseks take nothing on their bad faith claim. The judgment for contract damages and attorney's fees is affirmed.