**Bette H. DARBY, Appellant,**

v.

**JEFFERSON LIFE INSURANCE COMPANY, Appellee.**

No. 01–91–00255–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 4, 1995.

**624**

Elliott Flood, Austin, for appellant.

Daniel C. Pappas, P.C., Houston, for appellee.

Before DUGGAN,* HUTSON–DUNN and O'CONNOR, JJ.

### OPINION ON MOTION
### FOR REHEARING

LEE DUGGAN, Jr., Justice (Assigned).

We grant the appellant's motion for rehearing, withdraw our previous opinion, and substitute the following. We deny appellee's motion for rehearing.

Appellant, Bette H. Darby, formerly known as Bette H. Magnuson, sued her hospitalization insurance carrier, appellee Jefferson Life Insurance Company (Jefferson Life), after it denied her medical insur-

---

* Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the disposition of this case, which was submitted prior to that date.

ance claim and rescinded the underlying medical insurance policy. Darby appeals from a reformed judgment. In four points of error, Darby asserts the trial court erred in disregarding the jury's findings.

We affirm the judgment as reformed.

## Procedural Summary

The trial court granted Jefferson Life's motion for instructed verdict as to Darby's claims based on breach of the Texas Insurance Code and breach of the Texas Deceptive Trade Practices Act (DTPA). Darby won a favorable jury verdict on her contract and bad faith claims, including $85,000 in actual damages ($50,000 for medical expenses and $35,000 for mental anguish); and $85,000 in exemplary damages. The trial court initially entered judgment on the verdict, awarding Darby $85,000 in actual damages; $170,000 in statutory damages;[1] $102,000 in stipulated attorney's fees of 40 percent; and 10 percent post-judgment interest. The judgment did not award exemplary damages.

Jefferson Life filed a motion for new trial or to disregard certain jury findings and for remittitur. After a hearing, the trial court entered a reformed final judgment that (1) deleted the award of all damages except medical expenses, which were reduced to $24,759.27; (2) reduced attorney's fees to $9,903.71; and (3) allowed post-judgment interest at 10 percent. By entering this reformed judgment, the trial court set aside the tort finding of bad faith.

## Factual Summary

On October 5, 1987, Jefferson Life's agent, Charles Sharp, interviewed Darby in her home after she applied for a major medical insurance policy. Sharp read questions from the application and recorded Darby's answers on the policy application. In one section of the document, Dar-by's recorded answers showed one doctor's visit and one hospital confinement in the previous 24 months but also showed a denial of past health problems. In another section, Darby's recorded answers indicated she had a complete checkup during the previous month, a blood clot earlier that year, and was on medication for arthritis. Darby signed the application in two places, affirming that each answer was full, true, and complete, and agreeing that any false statement materially affecting Jefferson Life's acceptance of the risk would render the policy void.

At trial, Darby testified that she also told Sharp, although the application did not so reflect, that she had a computerized axial tomography (CAT) scan and a magnetic resonance image (MRI) the month before her application; she had been hospitalized for a blood clot and continued to see a physician three times a week; and she had rheumatoid arthritis, which was controlled with medication. She also may have told Sharp she saw a physician once a month.

Sharp did not testify at trial. The record showed that Sharp had underlined "arthritis" on Darby's form. Roberta Ladner McDonald, Jefferson Life's president, testified that "underlining" a condition was a positive indication of the condition.

Eleven days after Sharp's interview of Darby, on October 16, 1987, a representative of EMSI, an examination company retained by Jefferson Life, contacted Darby by telephone. McDonald testified that the company hired EMSI to interview Darby and verify her answers on the application.

McDonald admitted that, as a result of Sharp's initial interview and the EMSI report, the company knew Darby had seen a physician eight to 10 times over the past 24 months and had a history of migraines, blood clots, and arthritis. Jefferson Life's

1. Tex.Ins.Code Ann. art. 21.21, § 16(b)(1) (Vernon Supp.1995) (doubling actual damages for knowing violations).

underwriting rules require that an applicant be refused coverage if the applicant has been to a doctor more than eight times during the two years preceding the application date. Nevertheless, Jefferson Life approved Darby's insurance application and, on October 23, 1987, issued a health policy containing a rider excluding headaches or migraines and any disease or condition of the cardiovascular system.

Three months later, on January 28, 1988, Darby was hospitalized for acute diverticulitis (perforated colon), whereupon Darby filed a claim. The claims adjuster requested medical records from three of Darby's physicians. The records reflected that Darby had visited doctors approximately 36 times during the previous year. Jefferson denied Darby's claim and terminated the policy.

Darby received a letter from Jefferson Life indicating the denial of coverage was based on "health conditions not shown on the application." Darby testified that Jefferson Life's initial denial of the claim was based on its belief that diverticulitis was an undisclosed preexisting condition for which Darby had sought coverage when she purchased the policy. Jefferson Life wrote Darby a second letter which explained that the denial of her claim and termination of her policy occurred because of certain misrepresentations on her application. Darby also introduced a letter from Jefferson Life's previous president to its claims manager, written at the time of her claim, directing, "[i]f we have enough info, Dr. Reports, & case history, et cetera, to R and R [2] that would stand up in court and State Board, let's do it, if not get it." At trial, McDonald admitted the diverticulitis was not a preexisting condition and took the position that Darby's misrepresentations were the basis for the denial of coverage.

### Duty of Good Faith and Fair Dealing

In Darby's first point of error, she asserts the trial court erred in granting a reformed final judgment which disregarded the jury's finding that Jefferson Life breached its duty of good faith and fair dealing, and in refusing for that reason to include the extracontractual damages awarded by the jury.

### 1. Standard of Review

■ Ordinarily, in reviewing a judgment notwithstanding the verdict, we consider the record in the light most favorable to the jury's finding and reject the evidence and inferences to the contrary. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). In a bad faith action, however, we do not employ the traditional standard of review. *Rogers v. Cigna Ins. Co.*, 881 S.W.2d 177, 183 (Tex.App.—Houston [1st Dist.] 1994, no writ). Instead, we apply a particularized version of the "no evidence" standard of review that focuses on the evidence and its relation to the elements of bad faith. *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 600 (Tex.1993). This particularized standard is necessary to maintain the distinction between a contract claim on an insurance policy and a claim of bad faith delay or denial of that claim. *Id.*

■ To demonstrate bad faith, the insured must prove (1) the absence of a reasonable basis for denying or delaying payment of policy benefits; and (2) the insurer knew or should have known there was no reasonable basis for denying or delaying payment. *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376 (Tex.1994); *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988). The issue is whether there was evidence to deny the claim; the issue is not whether the insurer correctly evaluated the evidence. *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 284 (Tex.App.—San Antonio 1992, writ denied). If a reasonable basis exists for questioning the insurance claim, the insurer may deny it and

---

**2.** R and R stands for "rescind and refund."

litigate the matter without also facing a bad faith claim. *Id.*

 To apply the particularized "no evidence" standard, we view the evidence in the light most favorable to the prevailing party. *Lyons*, 866 S.W.2d at 600. However, we do not disregard undisputed evidence before the insurer when it denied the claim. *Polasek*, 847 S.W.2d at 287. We ask whether the insurer had no reasonable basis to delay or deny payment of the claim and whether it knew or should have known it had no reasonable basis for its action. *Lyons*, 866 S.W.2d at 600. Whether there is a reasonable basis for denial is judged by the facts before the insurer at the time the claim was denied. *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990); *Polasek*, 847 S.W.2d at 287.

## 2. Misrepresentation Defense

 Jefferson Life is entitled to judgment as a matter of law if it had a reasonable basis to deny Darby's claim.[3] *See Lyons*, 866 S.W.2d at 600. Jury question three, which tracked the *Aranda* bad faith test, asked:

> Did Jefferson Life Insurance engage in any breach of its duty of good faith and fair dealing that was a proximate cause of damage to Bette [Darby]?
>
> In order to find that an insurance company breached its duty of good faith and fair dealing, you must find the following elements: 1. the company denied payment of a claim; *2. the company did not have a reasonable basis for its denial of the claim; and 3. the company knew or should have known that there was no reasonable basis for its denial in payment.*

(Emphasis added.) The jury answered affirmatively.

It is undisputed that Jefferson Life denied Darby's claim, thus meeting the first requirement of the *Aranda* test. To refute *Aranda's* second requirement, that it had no reasonable basis for its denial of the claim, Jefferson Life contends it denied the claim because Darby misrepresented her health condition. Before the jury could answer its third question, regarding the *Aranda* test, it had to answer jury question one in the negative. Jury question one asked:

> Did Bette [Darby] make a material misrepresentation to Jefferson Life Insurance in connection with the policy in question?
>
> In order to find a "material misrepresentation" you must find each and every one of the following elements[:] 1. The making of a representation by Bette [Darby]; 2. The falsity of the representation; 3. Reliance on the representation by Jefferson Life Insurance in issuing the policy; *4. That Bette [Darby] intended to deceive Jefferson Life Insurance by making the representation; and 5. The representing was material.*

(Emphasis added.) The jury answered, "No."

Darby contends the evidence did not establish all elements of a misrepresentation defense, particularly the requirements of intent and material misrepresentation. According to Darby, Jefferson Life had no *reasonable* basis for denying her claim. In reviewing the second prong of the *Aranda* test, we must decide whether Jefferson Life had before it evidence reasonably suggesting that Darby misrepresented her health condition. *See Polasek*, 847 S.W.2d at 286.

---

**3.** A cause of action exists for breach of the duty of good faith and fair dealing when the insurer cancels a policy without a reasonable basis. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex.1994) (requiring proof of intent to deceive within two years of the policy's issuance when the cancellation is based on the insured's misrepresentation in the application). Although pled by Darby, there was no jury question on whether Jefferson Life breached its duty of good faith and fair dealing by cancelling her policy without a reasonable basis. Thus, our analysis is limited to whether Jefferson Life had a reasonable basis to deny or delay payment of the *claim*.

■■ An insurer may deny a claim or cancel a policy on the basis of the insured's misrepresentation if the insurer pleads and proves five elements: (1) the making of the representation; (2) the falsity of the representation; (3) the insurer's reliance on the representation; (4) the insured's intent to deceive in making the representation; and (5) the materiality of the representation. *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980); *Republic–Vanguard Life Ins. Co. v. Walters*, 728 S.W.2d 415, 418 (Tex.App.—Houston [1st Dist.] 1987, no writ). The misrepresentation defense may be used against a claim for breach of the duty of good faith and fair dealing. *Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 148 (Tex.App.—Dallas), *writ denied per curiam*, 802 S.W.2d 650 (Tex.1990).

■ A representation is made if the applicant signs a statement indicating the answers in the application are true and correct when the policy is delivered. *Mayes*, 608 S.W.2d at 616. The representation is false if the answers were untrue at the time they were made. *Id.* The representation is material if it actually induces the insurance company to assume the risk. *Westchester Fire Ins. Co. v. English*, 543 S.W.2d 407, 412 (Tex.Civ. App.—Waco 1976, no writ).

■ Intent to deceive may be established as a matter of law when the applicant warrants the representations to be true or when the applicant colludes with the insurance agent. *Diggs v. Enterprise Life Ins. Co.*, 646 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Reliance is established when the insurer does not know the representations are false. *See Koral Indus., Inc.*, 788 S.W.2d at 146 (finding that actual knowledge of falsity defeats misrepresentation defense); *John Hancock Mut. Life Ins. Co. v. Brennan*, 324 S.W.2d 610, 614 (Tex. Civ.App.—San Antonio 1959, writ ref'd n.r.e.) (finding no reliance when insurer's independent investigation reveals false answers).

■ By signing the application, Darby represented that her answers were truthful. Although Darby's application did not reveal all details of her medical history, Darby did share additional history with Sharpe, the insurance agent, and EMSI, Jefferson Life's examination company. The application itself contained conflicting information. Under the standard requiring untrue responses, we cannot say Darby's representations were false. There is no evidence of collusion between Darby and her agent, and without evidence of falsity, we cannot say that Darby intended to deceive Jefferson Life. In fact, McDonald admitted that Darby did not intend to deceive Jefferson Life. In addition, Jefferson Life knew the application contained misrepresentations and issued the policy in violation of its own underwriting rules. We cannot say that any misrepresentations were material or that Jefferson Life relied upon them.

■ Having issued the policy under these circumstances, it was unreasonable for Jefferson Life to deny Darby's claim on the basis that she had made misrepresentations on her policy application. When Jefferson Life denied Darby's claim, it first claimed that diverticulitis was an undisclosed preexisting condition. Later, it claimed the misrepresentation defense. Given this activity, Jefferson Life knew or should have known that it lacked a reasonable basis to deny Darby's claim.

When we view the evidence before Jefferson Life at the time it denied Darby's claim, in the light most favorable to Darby, and in the context of the bad faith elements, we find that all prongs of the *Aranda* test were met. Thus, the trial court erred in disregarding the jury's finding.

We sustain that portion of Darby's first point of error challenging the trial court's disregard of the jury's finding that Jefferson Life breached its duty of good faith and fair dealing.

## Damages

### 1. Mental Anguish Damages

Darby also argues in her first point of error that the trial court erred in not entering judgment on the jury's award of $35,000 in mental anguish damages. Because we find the trial court erred in disregarding the jury's finding as to bad faith, we also find the trial court erred in disregarding the corresponding damage award.

We sustain the remainder of Darby's first point of error.

### 2. Statutory Damages

Darby asserts in her second point of error that the trial court erred in granting a reformed final judgment that disregarded the jury's finding that Jefferson Life acted "knowingly," and in refusing to include the statutorily increased damages which she was entitled. Darby argues that article 21.21 of the Texas Insurance Code is violated whenever an insurance company fails to pay a claim in good faith.

■ Violations of the duty of good faith and fair dealing may constitute a violation of the DTPA and the insurance code. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988); *Allied General Agency, Inc. v. Moody*, 788 S.W.2d 601, 604 (Tex.App.—Dallas 1990, writ denied). However, violation of one of these statutes is not necessarily a violation of the other. *See, e.g., Lyons*, 866 S.W.2d at 599 (noting trial court award for breach of good faith and DTPA but not the insurance code, although all three were raised).

■ In this case, the trial court granted an instructed verdict as to Darby's DTPA and insurance code claims.[4] Thus, the jury's finding that Jefferson Life acted knowingly is not relevant. The trial court did not err in refusing to double Darby's damages under TEX.INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1995).

We overrule Darby's second point of error.

### 3. Medical Expenses

In Darby's third point of error, she contends the trial court erred in reforming the judgment by disregarding the jury's finding of $50,000 in medical expenses and reducing the amount to $24,759.27. Darby offered, and the court admitted into evidence, exhibits depicting collective medical expenses totalling $48,965.83.

■ Remittitur raises a question of fact. In either ordering a remittitur or, as here, reviewing a trial court's order of remittitur, the proper standard of review is factual sufficiency, not abuse of discretion. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622, 623, 624 (Tex. 1986). The court of appeals must examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, remitting or upholding a remittitur only if some portion of the award is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope*, 711 S.W.2d at 624; *City of Dallas v. Arnett*, 762 S.W.2d 942, 957 (Tex. App.—Dallas 1988, writ denied).

■ If there is no evidence to support a verdict's award of damages, the appellate court should uphold a trial court's entry of a take-nothing judgment or should itself render a take-nothing judgment for that amount. *Larson*, 730 S.W.2d at 641. If part of the damages verdict lacks sufficient evidentiary support, the court of appeals should suggest a remittitur of that part of the verdict. *Id.* The party prevailing in the trial is then given the option of accepting the remittitur or having the case remanded. *Id.*

■ Darby introduced seven exhibits reflecting total medical expenses of $48,-965.83, $1,034.17 less than the $50,000

---

4. On appeal, Darby does not challenge the instructed verdict nor does she challenge the trial court's failure to award exemplary damages.

damage verdict. However, Darby's total medical expenses introduced at trial were not what would she would pay under the insurance contract. Darby's $100 deductible, plus the contractually excluded 20 percent of surgical and hospital expenses up to $5,000 (which is a fixed sum of $1,000), plus other identifiable, excluded expenses, left $24,759.27 due by Jefferson Life. Jefferson Life's vice-president admitted, however, that her $24,759.27 audit figure did not include expenses incurred during Darby's July hospitalization. Those expenses, as shown on Darby's exhibits, equal $14,722.35. We conclude that the trial court should have added this sum to $24,759.27. Thus, the trial court erred by reducing the $50,000 verdict to $24,759.27 rather than $39,481.62.

We sustain Darby's third point of error.

### Prejudgment Interest

In her fourth point of error, Darby asserts that the trial court erred in not granting prejudgment interest on either the original or the reformed judgment amount.

■ When a contract provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty but does not fix an interest rate, prejudgment interest may be recovered. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988); *Wheat v. American Title Ins. Co.*, 751 S.W.2d 943, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ); Tex. Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). The rate recoverable is six percent per annum, commencing 30 days after the sum is due. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). If the sum payable is not ascertainable from the contract, then prejudgment interest may be appropriate in equity at the rate specified in article 5069–1.05. *Olcott*, 744 S.W.2d at 930; *Wheat*, 751 S.W.2d at 945.

■ Jefferson Life's contract with Darby provides a $100,000 aggregate benefit, sets out the conditions on which liability depends, and provides that benefits will be paid immediately upon receipt of written proof of such loss. Because the contract specifies the sum payable, Darby is entitled to prejudgment interest. Jefferson Life denied payment on July 11, 1988; the judgment was entered on November 27, 1990. Therefore, the trial court erred in denying prejudgment interest for 869 days at six percent per annum.

We sustain Darby's fourth point of error.

### Summary

We sustain Darby's first, third, and fourth points of error and overrule Darby's second point of error. We reform the judgment to award Darby $35,000 for mental anguish; $39,481.62 in medical expenses; and prejudgment interest for 869 days at six percent per annum. Because we increase the total actual damage award to $74,481.62, we also increase attorney's fees to $29,792.65, reflecting the parties' stipulation of 40 percent. We do not modify the judgment's award of post-judgment interest.

We affirm the trial court's judgment, as reformed.