**STATE FARM FIRE & CASUALTY CO.**

v.

**Clifford WOODS.**

No. 1:95–CV–260.

United States District Court,
E.D. Texas,
Beaumont Division.

May 9, 1996.

Clint Wayne Lewis, Lewis & Henry, Beaumont, TX, for State Farm Fire & Casualty Company.

John H. Seale, Seale Stover Coffield & Bisbey, Jasper, TX, for Clifford Woods.

*MEMORANDUM RE: PLAINTIFF'S MARCH 1, 1996 MOTION FOR SUMMARY JUDGMENT AND APRIL 16, 1996 FIRST AMENDED MOTION FOR SUMMARY JUDGMENT*

HINES, United States Magistrate Judge.

### I. Background

This declaratory judgment action was filed by State Farm Fire & Casualty Company ("State Farm") for declaration of nonliability

on a homeowner's insurance policy issued to defendant Clifford Woods ("Woods") covering a dwelling in Jasper County, Texas. The parties have consented to conduct all proceedings in this civil action before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636.

On the evening of December 29, 1994, both the dwelling and a second, nearby structure on the same grounds, which housed defendant's office,[1] were completely destroyed by fire. Plaintiff asserts that the fire was the result of arson.

Defendant filed a counterclaim alleging breach of contract, breach of the duty of good faith and fair dealing, violation of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), and violation of Texas Insurance Code article 21.21. In connection with the breach of the duty of good faith and fair dealing counterclaim, Woods' pleading alleges State Farm failed to make a reasonable investigation and denied Woods' claim despite the fact that it had no concrete evidence that Woods was involved in the fire in any way. The DTPA and Insurance code claims are premised on the same "no reasonable basis for denial" theory.[2]

Pending before the court are plaintiff's March 1, 1996 "Motion for Summary Judgment on the Issues of Good Faith and Fair Dealing as Alleged in Defendant's First Amended Counterclaim" and plaintiff's April 16, 1996 "First Amended Motion for Summary Judgment on the Issues of Plaintiff's Entitlement to Extra–Contractual Damages Alleged in Defendant's First Amended Counterclaim." These motions seek pretrial disposition of defendant's good faith and fair dealing, DTPA, and Texas Insurance Code counterclaims.

1. The office structure was separately insured with a nonparty carrier. Defendant's application for benefits under that policy was approved.

2. The counterclaim reads, in pertinent part:
   Counter-defendant further failed and refused to evaluate the information and surrounding facts, choosing instead to hide behind the palpably incorrect assumptions and conclusions of its agents, employees and consultants. In

## II. Duty of Good Faith and Fair Dealing

The Texas Supreme Court recognizes a cause of action for breach of the duty of good faith and fair dealing in connection with denial of payment of benefits on an insurance policy. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Public policy supports allowing such a cause of action to exist due to the unequal bargaining power between a typical insurance company and a typical insured. *Id.* The insurer has "exclusive control over the evaluation, processing, and denial of claims." *Id.* Without this common law bad faith remedy, "unscrupulous insurers would be able to take advantage of their insureds' misfortunes in bargaining for settlement or in resolving claims by arbitrarily deny[ing] coverage and delay[ing] payment of a claim with no more penalty than interest on the amount owed." *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex.1994) (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987)) (alterations in original).

However, a claim alleging breach of the duty of good faith and fair dealing is a cause of action sounding in tort and is distinct from a breach of contract action stemming from the same denial or delay of insurance benefits. The duty arises not from the terms of the insurance contract but from an obligation the law imposes as a result of the special relationship. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). "A claim for breach of the duty of good faith and fair dealing is separate from any claim for breach of the underlying insurance contract, and the threshold of bad faith is reached only when the breach of contract is accompanied by an independent tort." *Shelton*, 889 S.W.2d at 283 (citations omitted).

order to justify its claim denial, counter-defendant wrongfully accused counter-plaintiff of arson and fraud. Counter-defendant persisted in its denial of counter-plaintiff's claim and its unfounded accusations even though a person of ordinary prudence and care would have done otherwise.
Defendant's First Amended Counterclaim at 4.

To prevail in a bad faith claim, "an insured claiming bad faith must prove that the insurer had no reasonable basis for denying ... payment of the claim, and that it knew or should have known that fact." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988); *Arnold*, 725 S.W.2d at 167); *see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 600 (Tex.1993); *St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 620 (Tex.App.—Texarkana 1990).

■ Unlike a breach of contract claim, the issue in a bad faith claim is not whether the insured in fact set the fire; rather it is whether the insurer possessed knowledge at the time of the policy denial which amounted to a reasonable basis for its belief that the insured played a role in the fire or that some other disqualifying provision of the policy had been triggered. *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 286–87 (Ct. App.—San Antonio 1992); *St. Paul Lloyd's Ins. Co. v. Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991). Thus, in evaluating a bad faith claim, the court should take care not to view evidence relating to the tort issue of lack of reasonable basis for denial or delay in payment of a claim as wholly congruous with the evidence on the contract issue of coverage. *Lyons*, 866 S.W.2d at 600. Rather, the court should focus on the specific facts and evidence before the insurer at the time of its denial of benefits to determine whether they could create at least a genuine difference of opinion over the duty to pay benefits. *See, e.g., Estrada v. State Farm Mut. Auto. Ins. Co.*, 897 F.Supp. 321 (W.D.Tex.1995); *Packer v. Travelers Indemnity Co.*, 881 S.W.2d 172 (Tex.App.—Houston [1st Dist.] 1994).

■ Neither the existence of a bona fide dispute about an insurer's liability nor a mistake by the insurer about the factual basis for its denial will alone give rise to a cause of action for bad faith. *Moriel*, 879 S.W.2d at 17–18. If there is a bona fide controversy over factual prerequisite to coverage under the policy, then no bad faith cause of action exists. *National Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex.1991). Stated another way, as long as the insurer's basis for denial was reasonable, even though it may eventually be determined by the factfinder to be erroneous, the insurer will not liable for the tort of bad faith. *Lyons*, 866 S.W.2d at 600. A carrier retains the right to deny invalid or questionable claims without subjecting itself to tort liability for an erroneous denial of a claim. *State Farm Lloyds, Inc.*, 847 S.W.2d at 283; *Lyons*, 866 S.W.2d at 600.

The first prong of the bad faith test simply requires "an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Aranda*, 748 S.W.2d at 213. Said one commentator:

If the insurer introduces competent and probative evidence from which reasonable persons could conclude the claim is not valid, then the logical conclusion is that a reasonable basis existed to deny the claim. Such evidence of a bona fide dispute establishes a reasonable basis for the denial of the claim and defeats the first element of plaintiff's claim for bad faith as a matter of law.

The existence of a factual dispute regarding the validity of a claim does not entitle the insured to submit the issue of reasonableness of the basis for denial to the jury in a bad faith case.[3]

In short, "the bad faith cause of action requires much more demanding proof than the suit on the insurance policy." *State Farm Lloyds, Inc.*, 847 S.W.2d at 283. "If the factfinder could simply disagree with the insurer's assessment of such evidence in the bad faith action, the insurer would be held liable in tort for its erroneous denial of the claim. The supreme court in *Aranda* assured us that this would not happen." *State Farm Lloyds, Inc.*, 847 S.W.2d at 286.

---

**3.** David Lloyd (Trey) Harlin III, Comment, *Is Common Law Bad Faith Dead in Texas, or Simply Getting a Second Breath? The History of Bad faith in Texas*, 2 Tex.Wesleyan L.Rev. 173, 189 (1995).

■ Finally, although evidence of liability on the insurance contract should not be given undue weight in the bad faith determination, such evidence may, however, in some circumstances support a finding that an insurer lacked any reasonable basis for denying a claim if it can be shown the insurer unreasonably disregarded evidence of coverage. *Lyons*, 866 S.W.2d at 601. Other indications that an insurer lacked a reasonable basis for a denial of coverage include "evidence of knowledge by [insurer] that ... experts' reports were not objectively prepared, evidence of knowledge by [insurer] that the experts' methodology was faulty, evidence that [insurer] knew its statement of [insured's] financial obligations was inaccurate, or evidence that [insurer] simply failed to engage in any investigation whatsoever before denying the claim." *Id.; see also State Farm General Ins. Co. v. Nguyen*, No. 1:95–CV–369, 1996 WL 192089, at *5 (E.D.Tex. Mar. 25, 1996).

### III. Summary Judgment Standards

State Farm moves for summary judgment against Woods on Woods' bad faith counterclaim, as well as on the DTPA and Insurance Code counterclaims, by pointing to portions of the record which it believes demonstrate the nonexistence of a genuine issue of material fact on those claims. State Farm claims there is a wholesale absence of proof on a crucial element of these counterclaims— namely, that State Farm did not possess a reasonable basis for denying the claim.

Upon State Farm's successfully meeting its initial summary judgement burden of demonstrating that there is an absence of proof tending to show it lacked a reasonable basis for denying the claim, the burden shifts to nonmovant to come forward with competent summary judgment proof showing the existence of a genuine fact issue. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, by 'conclusory allegations,' *Lujan [v. National Wildlife Fed'n*, 497 U.S. 871, 871–73, 110 S.Ct. 3177,

3180, 111 L.Ed.2d 695 (1990) ], by 'unsubstantiated assertions,' *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994), or by only a 'scintilla' of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994)." *Little*, 37 F.3d at 1075.

### IV. Analysis of Bad Faith Claim

■ Accompanying the original motion for summary judgment is the affidavit of Brent Sandlin, the claims specialist for State Farm who investigated Woods' claim for benefits. The affiant concludes Woods possessed a financial motivation to burn his property. Mr. Woods, who earned approximately $14,350 in his position as justice of the peace, was defeated in his reelection bid shortly before the fire. Woods was also divorced shortly before the fire and was planning on selling his residence and constructing a new home on a rural forty-four-acre tract he had just purchased. Woods sought an appraisal of his dwelling prior to the fire; the $73,000 appraisal was significantly lower than the $150,000 figure at which Woods had previously solicited offers. A $14,000 payment was coming due in June of 1995 on the 44–acre tract. Also, as part of the divorce settlement, Woods was required to pay his wife $14,000 and was required to assume the balance on a $15,000 loan with a local bank.

Defendant filed a short response to the initial motion for summary judgment on March 14, 1995, but has not, despite the passage of the response period, filed any response to the first amended motion for summary judgment. None of this financial evidence was disputed in defendant's response to the motion for summary judgment.

Mr. Sandlin's affidavit also includes various elements of circumstantial evidence suggesting involvement by defendant in the planning of the fire. Immediately prior to the fire, Woods removed a single-shot twelve-gauge shotgun, the first shotgun Woods ever owned, from his home and placed it in an abandoned school bus stored on the back of his property. A model 97 Winchester twelve-gauge shotgun, a gift to defendant from his father, was also removed and placed in the abandoned bus. A family Bible was removed from the home and placed in the bus. An "aladdin lamp" was removed from

the home and delivered to defendant's son. An antique sewing machine and a porch swing were delivered to defendant's daughter-in-law. The facts concerning removal of this property are not challenged in defendant's response. It is also alleged that several valuable electric tools could not be located after the fire.

Attached as an exhibit to the affidavit is a report of K. Britt McManus, a fire cause and origin analyst with Loss and Research Analysis, a firm retained by State Farm to investigate the fire scene. Mr. McManus' report concludes that the fire was incendiary in nature. An interview with the first eyewitness on the scene of the fire revealed that both the residence and the detached office structure were burning simultaneously. A trail-like ring of fire circled the front porch of the office structure. Moreover, a six-gallon fuel container was found by the State Fire Marshal's office in the living room area of the dwelling. Woods later stated that the container had been stored in a boat located in the rear of the dwelling and that the container was full prior to the fire. Four fire debris samples were collected, but tests came back negative for the presence of accelerants.

Woods asserts he was on a hunting trip in Mississippi at the time of the fire. A friend was keeping an eye on the premises and taking care of Woods' pets. This individual said in a statement that he had last fed the animals and been to the property the morning of the fire. This statement was contradicted by the friend's wife, who said that the animals were not fed until late afternoon or early evening on the day of the fire.

Woods claims that he received several threatening phone calls prior to the fire. On one occasion Woods stated he heard a rumor that a certain incarcerated individual made arrangements to burn his property.

█ Further, defendant's response includes a conclusory affidavit from his attorney. In it, the attorney states, "I ... am personally familiar with the process by which insurance companies investigate, adjust, settle and litigate fire insurance claims. I have reviewed the affidavits, exhibits and evidence relied upon by State Farm in support of its motion for summary judgment filed in this

case, and such evidence fails to establish any reasonable basis for the denial of Clifford Woods' claim, and State Farm should have known it had no reasonable basis for its actions." However, this affidavit is of little, if any, significance in the summary judgment analysis. "Unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (1983)).

█ Because arson is usually conceived and executed in secrecy, circumstantial evidence may be utilized by an insurer to prove this policy defense. *Luker*, 801 S.W.2d at 622. Circumstantial evidence is similarly relevant in resolving a claim of bad faith. *Id.; State Farm Lloyds, Inc.*, 847 S.W.2d at 287. Although an insured may present some evidence of noninvolvement in a fire, if ample circumstantial evidence of involvement exists, the bad faith issue may be resolved as a matter of law in favor of the insurer. "Th[e] determination to deny [a] claim is not to be based on the insurer's success or failure in court on liability for the claim. The denial may be erroneous and still be in good faith if it is based upon the information which was available to the insurer at the time of the denial and which supported the denial of the claim. When there is a bona fide controversy [of coverage], the insurer has a right to have its day in court and let the jury determine each witness's truthfulness." *Luker*, 801 S.W.2d at 621–22. "[I]f the circumstantial evidence before the insurer reasonably suggests that the insured may have committed arson, there is no bad faith cause of action, even though the jury would easily have resolved the issue in the insured's favor." *State Farm Lloyds, Inc.*, 847 S.W.2d at 287.

While defendant has presented some evidence in opposition to the motions for summary judgment, plaintiff insurer has met its summary judgment burden of demonstrating that there does not exist a genuine issue on

the question of whether it lacked a reasonable basis for denying the claim. State Farm was in possession of evidence strongly suggesting that the fire was intentional.[4] Even more compelling, however, are the suggestions that defendant was himself involved in the fire—specifically, the removal of several objects of personal property from the dwelling immediately prior to the fire.[5] Finally, plaintiff possessed evidence suggesting that plaintiff may have been experiencing financial difficulties at the time of the fire, although a comprehensive financial profile is not developed in the record before the court.[6] The court finds that the evidence before the insurer at the time the claim was denied was, in the aggregate, sufficient to amount to a reasonable basis for denial of the claim by the insurer. Because defendant has not demonstrated, for example, that plaintiff knowingly based its decision to deny the claim on information that was gathered by biased experts or through faulty methodology, there does not exist a genuine issue of fact on the question of whether plaintiff lacked a reasonable basis for denying the claim. Because such is an essential element of defendant's bad faith counterclaim, plaintiff's motion for summary judgment will be granted on that counterclaim.

## V. Other Extra–Contractual Claims

When an insured joins claims under the DTPA and the Texas Insurance Code with a bad faith claim and those DTPA and Insurance Code claims are based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable basis—then those DTPA and Insurance Code claims must fail if the bad faith claim fails. *Emmert v. Progressive County Mut. Ins. Co.,* 882 S.W.2d 32, 36 (Tex.App.—Tyler 1994); *State Farm Lloyds,*

*Inc.,* 847 S.W.2d at 282 n. 2; *see Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.,* 906 S.W.2d 218, 226 n. 6, 226–27 (Tex. App.—Texarkana 1995). As noted above, *see supra* note 2, defendant's DTPA and Insurance Code claims will require the same analysis as the bad faith claim. Therefore, plaintiff's motion for summary will be granted on the DTPA and Insurance Code claims as well.

## VI. Conclusion

Plaintiff's motions for summary judgment on defendant's bad faith, DTPA, and Insurance Code counterclaims are granted. An order will be entered separately.

---

**4.** For example, State Farm possessed the report and conclusions of Mr. McManus at the time of denial. The insurer also knew that a gas can had been found in the dwelling.

**5.** Plaintiff also points to the fact that office furniture belonging to Jasper County and files concerning defendant's position as justice of the peace were removed from the office shortly before the fire. As defendant explains in his response, however, this is easily explained by the fact that these items were removed toward the end of Woods' tenure as justice of the peace.

**6.** For example, while plaintiff's motion suggests that defendant's salary as a justice of the peace was fairly modest, there is no indication of the level of income defendant derived from ancillary activities. A similarly incomplete picture is painted by the assertion that plaintiff was required to assume the "balance" of a $15,000 loan from a local bank, as that balance is not specified.