Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion
filed July 15, 2004









 



Affirmed in Part, Reversed and Remanded in Part, and
Memorandum Opinion filed July 15, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00879-CV

____________

 

GLENN THOMAS, Appellant

 

V.

 

ALLSTATE INSURANCE
COMPANY,
Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 00-65990-A

 



 

M E M O R A N D U M   O P I N I O N








Appellant Glenn Thomas appeals from a
summary judgment in which the trial court dismissed with prejudice Thomas=s claims against
his automobile insurance carrier, appellee Allstate Insurance Company.  We hold Allstate=s summary judgment
proof conclusively establishes Thomas does not have a claim resting on a theory
of a breach of the duty of good faith and fair dealing.  Accordingly, we affirm the trial court=s take-nothing
summary judgment on Thomas=s statutory claims
that rest on the bad faith theory.[1]  We further hold Allstate=s summary judgment
motion does not establish the absence of a genuine issue of material fact in
relation to Thomas=s claims for misrepresentation under the
Texas Insurance Code.  Accordingly, we
reverse the summary judgment on those claims and remand them to the trial court
for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Thomas was involved in an automobile
accident with an uninsured motorist on April 17, 2000.  Thomas filed claims with Allstate for
property damage to his car, past and future medical expenses, lost earnings,
and pain and suffering.  In support of
his medical expenses, Thomas submitted medical records and bills from his
treating physicians.

According to the claims diary of David
Marks, an Allstate claims adjuster handling Thomas=s claims, on April
28, 2000, Marks received a telephone call from a doctor=s office where
Thomas was seeking treatment.  The doctor
asked whether Allstate would accept bills from the doctor=s office, and
Marks explained they could not guarantee payment of the medical bills.  In the course of the call, Marks also spoke
with Thomas and  told Thomas he did not
see a final liability decision as having been made at that time.  Marks=s notes then read,
ALet insd know that
his UM coverage will pay for his dmgs and reasonable medical to the extent the
clmt [sic] is responsible for if found to be proximate cause.  Insd was asking if we were denying claim, and
I told him no we were not.@  At some point, Allstate obtained information
from the Southwest Index Bureau and the National Index Claim Bureau indicating
Thomas had previously filed two claims regarding injuries to his back, knee,
wrist, and arms.








On May 8, 2000, the claims diary reflects
that Allstate had attributed fault to the other motorist and therefore had
determined to handle the claim as an uninsured motorist claim, rather than
under Thomas=s collision coverage.  In an entry the same day, Marks recorded, AHave already
explained thoroughly UMBI handling and the impact of minor damages.  Send MA/WA to insd.  With him receiving the alleged treatment and
nature of impact we will probably need medical records and employer records if
LOE is alleged.@  On
May 22, 2000, the claims diary reflects Allstate was going to issue a check for
the property damage.

Allstate then
requested Thomas to provide additional medical records.[2]  On July 25, 2000, Thomas wrote Allstate,
indicating he would again provide information from his treating physicians, but
objecting that AAllstate=s medical
authorization is much to [sic] broad  and
harassing in nature.@  On
September 8, 2000, Allstate, over the signature of Connie Darby, wrote Thomas:

We are reserving our right to later
disclaim any obligation under the policy and assert a defense of no coverage
under the policy because:

Part E - Duties After An Accident
or Loss

B. A person seeking any coverage
must:

1.  Cooperate
with us in the investigation, settlement or defense of any claim or suit

4.  Authorize
us to obtain:

a. 
medical reports; and

b. 
other pertinent records.

 

On January 17,
2001, Thomas sued Allstate for breach of contract, violation of Texas Insurance
Code articles 21.21 and 21.55, violation of the Texas Deceptive Trade Practices
Act, and breach of the common law duty of good faith and fair dealing.  The trial court subsequently severed the
extracontractual claims from the underlying breach of contract claims.








During discovery
in the breach of contract action, Allstate requested production of copies of
tax returns from 1990 to the present, copies of documents evidencing medical
treatment and bills in connection with the automobile accident, and signed
authorizations to obtain employment records and medical records.  The medical authorization form was directed
to Aany physician or
health care practitioner who has attended to [Thomas] or any hospitals or
clinics in which he has been confined or treated@ and covered Aany and all
medical information, records, reports and statements which such physicians,
health care practitioners, hospitals or clinics may have relative to any
evaluation, examination, treatment or therapy rendered to him.@

When Thomas did
not provide this information, Allstate filed a Motion to Compel.  Thomas then amended his petition to delete
claims for lost earnings and earning capacity. 
On August 22, 2001, the trial court ordered Thomas to Aprovide an
unlimited medical records authorization for five years before April 17, 2000
and provide medical records for ten years before the accident relating to the
parts of his body that he claims were injured in the accident.@  The trial court also ordered Thomas Ato identify prior
injuries and all health care providers who have provided medical treatment to
[Thomas] for five years prior to April 17, 2000.@  Finally, the court denied as moot, that part
of Allstate=s motion seeking to compel work and wage
information.  According to Allstate,
Thomas did not provide a complete list of medical providers in response to the
court=s order. 

On September 3,
2002, the underlying breach of contract case proceeded to a two-day jury
trial.  On October 4, 2002, the trial
court rendered judgment on the jury=s verdict and
awarded Thomas $4,728.25 in past damages, $5,000.00 in future damages, and
$2,144.25 in costs.  On the same day,
Allstate delivered checks for those amounts to Thomas=s attorney.








On March 21, 2003,
Allstate filed two summary judgment motions challenging Thomas=s remaining
claims:  a no-evidence motion under Texas
Rule of Civil Procedure Rule 166a(i) and a traditional motion under Rule
166a(c).  In the no-evidence motion,
Allstate sought dismissal of Thomas=s Aclaims under
article 21.21 of the Texas Insurance Code and all of [Thomas=s] statutory and
common law claims of breach of the duty of good faith and fair dealing.@  In the traditional motion, styled AMotion for Summary
Judgment,@ Allstate sought Adismissal of all
[Thomas=s] claims under
article 21.21 of the Texas Insurance Code@ and further
alleged:  AAllstate has not
violated art. 21.21 as a matter of law because Allstate acted in good faith
toward its insured and made a prompt, fair settlement with [Thomas], therefore
all of [Thomas=s] claims should be dismissed.@[3]

At the time
Allstate filed the summary judgment motions, Thomas=s First Amended
Original Petition was his live pleading. 
In that petition, Thomas alleged Allstate had violated Insurance Code
article 21.21 in eleven particular regards, most of which tracked the article
21.21 language.  In the paragraph
containing the DTPA cause of action, Thomas cited no particular DTPA section
and restated, in identical language, the eleven Insurance Code allegations.  Finally, Thomas alleged breach of the duty of
good faith and fair dealing, citing delayed payment of his claim and failure to
reasonably investigate.

On April 28, 2003,
Thomas filed a Second Amended Petition. 
He included a paragraph on Abreach of
contract,@ in which he alleged Allstate Abreached the
contract by specifically failing to pay [Thomas=s] claim when it
had all the necessary information to do so.@  He also included a paragraph on ADTPA and Texas
Insurance Code Violations.@  In this paragraph, he quoted definitions
and  provisions from Texas Business and
Commerce Code sections 17.45, .46, and .50, 
and alleged generally that Allstate Ahas violated
[Thomas=s] rights as a
consumer under the DTPA; Tex. Bus. Comm. Code Ann. ' 17.41 et. seq.@  He also quoted Insurance Code article 21.21
definitions and provisions and, as in the First Amended Original Petition,
alleged Allstate had violated Insurance Code article 21.21 in eleven Aparticulars,@ generally
tracking the article 21.21 language. 
Thomas did not separately allege breach of the common law duty of good
faith and fair dealing.

In a single
document, Thomas subsequently responded to both summary judgment motions.  On May 28, 2003, the trial court signed an
order providing:








After
considering the Motions, any responses thereto, and arguments, it is the Court=s opinion that the Motion for
Summary Judgment should be GRANTED.  It
is, therefore,

ORDERED
that the Motion for Summary Judgment filed by Allstate Insurance Company is
granted in its entirety and that summary judgment is entered in Allstate
Insurance Company=s favor on all claims brought
against it by Glenn Thomas, all such claims being hereby dismissed with
prejudice.

 

Thomas then filed
a Motion for New Trial.  The motion was
overruled by operation of law.

DISCUSSION

Issue Presented
and Preliminary Consideration

In a single issue,
Thomas contends the trial court erred in granting a final summary judgment in
favor of Allstate on all of Thomas=s claims.  Thomas then separately challenges the trial
courts rulings on (1) his common law claim for breach of the duty of good faith
and fair dealing, (2) his article 21.21 claims, and (3) his DTPA claims.  Before we turn to the propriety of the trial
court=s summary judgment
on each of appellant=s claims, however, we briefly consider the
nature of the trial court=s ruling.

Although Allstate
filed both a no-evidence summary judgment motion and a traditional summary
judgment motion, Thomas contends the trial court granted the traditional
motion.  Based on our review of the
record, we agree.  Allstate styled its
traditional motion as AMotion for Summary Judgment,@ and in its order,
the trial court stated it was granting Allstate=s AMotion for Summary
Judgment.@ 
Moreover, Allstate provided the trial court with an order by which the
trial court could have granted the no-evidence motion, but the court did not
sign that order.  Accordingly, we treat
the order in this case as one granting traditional summary judgment.








Summary Judgment
Standards and Standard of Review

The movant for
summary judgment has the burden to show there is no genuine issue of material
fact and it is entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548 (Tex. 1985).  When deciding
whether there is a disputed material fact issue precluding summary judgment, we
must take as true all evidence favorable to the non‑movant.  Id. at 548B49.  We must indulge every reasonable inference in
favor of the non‑movant and resolve any doubts in its favor.  Id. at 549.  We must not consider evidence favoring the
movant=s position unless
the evidence is uncontroverted.  Weaver
v. Stewart, 825 S.W.2d 183, 185 (Tex. App.CHouston [14th
Dist.] 1992, writ denied) (citing Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965)).  Because the propriety of summary judgment is
a question of law, we review the trial court=s decision de
novo.  See Natividad v. Alexsis, Inc.,
875 S.W.2d 695, 699 (Tex. 1994).

A defendant moving
for traditional summary judgment assumes the burden of showing as a matter of
law the plaintiff has no cause of action against him. Levesque v. Wilkens,
57 S.W.3d 499, 503 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Traditional
summary judgment for a defendant is proper only when the defendant negates at
least one element of each of the plaintiff=s theories of
recovery, or pleads and conclusively establishes each element of an affirmative
defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

Thomas=s Claims

Breach of Duty of
Good Faith and Fair Dealing








Although in his
First Amended Original Petition Thomas alleged breach of the duty of good faith
and fair dealing, he did not renew this claim in his Second Amended
Petition.  A plaintiff=s timely filed
amended pleading supersedes all previous pleadings and becomes the controlling
petition in the case regarding theories of recovery.  See Tex. R. Civ. P. 65; J.M. Huber
Corp. v. Santa Fe Energy Res., Inc., 871 S.W.2d 842, 844 (Tex. App.CHouston [14th
Dist.] 1994, writ denied).  The amended
pleading effected an abandonment of Thomas=s claim for breach
of the duty of good faith and fair dealing. 
See Radelow‑Gittens Real Prop. Mgmt. v. Pamex Foods, 735
S.W.2d 558, 559 (Tex. App.CDallas 1987, writ
ref=d n.r.e.); see
also Wu v. Walnut Equip. Leasing Co., 909 S.W.2d 273, 278 (Tex. App.CHouston [14th
Dist.] 1995, rev=d on other grounds, 920 S.W.2d 285
(Tex. 1996).  Accordingly, we do not
consider whether summary judgment was proper on this claim.  See Wheeler v. Methodist Hosp., 95
S.W.3d 628, 634 n.2 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (holding, by omitting from his second amended petition
certain claims, plaintiff abandoned them and therefore declining to consider
whether summary judgment on omitted claims was proper).

The Article 21.21
Claims

In the trial
court, Thomas alleged eleven violations of Texas Insurance Code article 21.21,
section 4(10).  On appeal, he contends
the trial court improperly granted summary judgment on only six:  (1) unreasonable delay in payment of his
claim; (2) failure to promptly provide a reasonable explanation of the basis in
the policy, in relation to the facts or applicable law, for denial of the claim
or for the offer of a compromised settlement of a claim; (3) failure to pay a
claim without conducting a reasonable investigation with respect to the claim;
(4) failure within a reasonable time to submit a reservation of rights letter;
(5) making a material untrue statement of fact or law; and (6) misrepresenting
terms and provisions of his policy.

Although, as
discussed above, Thomas subsequently abandoned his bad faith claim, that claim
was live at the time Allstate filed its summary judgment motion.  In its motion, Allstate integrated an
argument on good faith and fair dealing with its argument addressing Thomas=s allegations
under the Insurance Code and DTPA.  It
does so again on appeal.








To the extent
Allstate conclusively established Thomas did not have a bad faith claim, it
conclusively disproved Thomas=s Insurance Code
and DTPA claims based on the same theory underlying the bad faith claim.  State Farm Fire & Cas. Co. v. Woods,
925 F. Supp. 1174, 1180 (E.D. Tex. 1996), aff=d, 129 F.3d 607
(5th Cir. 1997); see Carter v. State Farm Mut. Auto. Ins. Co., 33 S.W.3d
369, 373 (Tex. App.CFort Worth 2000, no pet.) (stating, when
claims under DTPA and Insurance Code do nothing more than recharacterize a bad
faith claim, defense to the bad faith claim serves to defeat statutory claims);
Lane v. State Farm Mut. Auto. Ins. Co., 992 S.W.2d 545, 554 (Tex. App.CTexarkana 1999,
pet. denied) (stating same, but holding 
recovery on Insurance Code article 21.21 claims not barred as a matter
of law when latter go beyond insurer=s mere refusal to
pay); Escajeda v. Cigna Ins. Co. of Texas, 934 S.W.2d 402, 408 (Tex.
App.CAmarillo 1996, no
writ) (stating same, but distinguishing situations in which the tortious acts
underlying the DTPA/Insurance Code and bad faith claims differ).  We therefore consider Allstate=s argument on
Thomas=s bad faith claim
in the limited context of deciding whether the trial court erred in granting
summary judgment on Thomas=s claims under
Insurance Code article 21.21.

As the supreme
court explained in Aranda v. Insurance Co. of North America, the tort of
bad faith has two elements, the first objective, the second, subjective:  (1) the absence of a reasonable basis for
denying or delaying payment of the benefits of the policy and (2) that the
carrier knew or should have known there was no reasonable basis for denying the
claim or delaying payment of the claim. 
748 S.W.2d 210, 213 (Tex. 1988); accord Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 18 (Tex. 1994).  The
supreme court subsequently clarified that the objective element is satisfied by
proof that an insurer denied or delayed payment of a claim after liability was
reasonably clear.  See Universe Life
Ins. Co. v. Giles, 950 S.W.2d 48, 55B56 (Tex. 1997).








As the court
explained in Moriel, AEvidence that
merely shows a bona fide dispute about the insurer=s liability on the
contract does not rise to the level of bad faith.@  879 S.W.2d at 17.  Bad faith is also not established if the
evidence shows the insurer was merely incorrect about the factual basis for its
denial of the claim, or about the proper construction of the policy.  Id. at 18.  Nevertheless, an insurer may breach its duty
of good faith and fair dealing when it fails to reasonably investigate a claim
in order to determine whether its liability is reasonably clear.  See Giles, 950 S.W.2d at 56 n.5. 

The summary
judgment proof in the present case negated the objective element of Thomas=s bad faith
claim.  Given the applicable law, the
summary judgment proof established that the extent of Allstate=s liability for
Thomas=s bodily injury
claims was not reasonably clear and Allstate reasonably investigated Thomas=s bodily injury
claim.

Insurance Code
article 5.06-1 provides in relevant part:

No automobile liability insurance .
. . covering liability arising out of the ownership, maintenance, or use of any
motor vehicle shall be delivered or issued for delivery in this state unless
coverage is provided therein or supplemental thereto . . . for the protection
of persons insured thereunder who are legally entitled to recover damages
from owners or operators of uninsured or underinsured motor vehicles because of
bodily injury, sickness, or disease, including death, or property
damage resulting therefrom.

 

Tex. Ins.
Code Ann. art. 5.06-1(1) (Vernon Supp. 2004) (emphasis added) (footnote
omitted).  The Texas Supreme Court has
interpreted the phrase Alegally entitled to recover@ in an uninsured
motorist policy to mean Athe insured must be able to show fault on
the part of the uninsured motorist and the extent of the
resulting damages.@  Franco
v. Allstate Ins. Co., 505 S.W.2d 789, 792 (Tex. 1974) (emphasis
added).  As the Austin Court of Appeals
has stated, to recover under an uninsured motorist policy, the injured party
must establish the amount of the damages. 
Sikes v. Zuloaga, 830 S.W.2d 752, 754 (Tex.  App.CAustin 1992, no
writ) (citing State Farm Mut. Auto. Ins. Co. v. Matlock, 462 S.W.2d 277,
278 (Tex. 1970)).   The Austin court
subsequently explained, AThis legal precedent establishes that in
order for the claim to be one that >must be paid by
the insurer,= the insured claiming uninsured motorist
benefits must secure an agreement or a judgment determining the amount of
damages caused by the accident.@  Mid‑Century Ins. Co. of Texas v.
Barclay, 880 S.W.2d 807, 811 (Tex. App.CAustin 1994, writ
denied) (emphasis added).








Thus, contrary to
Thomas=s suggestion,
Allstate=s determination
the uninsured motorist was at fault and Allstate=s decision to pay
one-hundred percent of Thomas=s property damages
did not end the inquiry regarding Allstate=s liability on
Thomas=s claim.[4]  Allstate still had to determine the extent to
which Thomas=s alleged bodily injury damages were  caused by the accident, and Allstate was therefore
required to investigate this issue.

It is undisputed
Marks was contacted by at least one of Thomas=s health care
providers who told Marks about prior testing that had been done there.  By the time Marks transferred Thomas=s file to Darby in
the special investigation unit, Allstate had received the Southwest Injury
Bureau report indicating Thomas had previously been injured.  The nature of the impact in relation to
Thomas=s injuries was
also a factor as one Allstate agent apparently explained to Thomas, with the
following notation appearing in the Claims Diary for May 8, 2000:  AHave already
explained thoroughly UMBI handling and the impact of minor damages.  Send MA/WA to insd.  With him receiving the alleged treatment and
nature of impact we will probably need medical records and employer records if
LOE is alleged.@ 

Darby wrote Thomas
on June 27, 2000, asking Thomas to contact her Ato schedule an in
person statement to discuss the accident and obtain medical/wage authorization.@  On July 25, 2000, Thomas responded, refusing
to sign the authorization because it was Amuch to [sic]
broad and harassing in nature.@  On September 8, 2000, Darby sent Thomas the
reservation of rights letter referring to an insured=s duty to
cooperate when seeking coverage.[5]








Under the relevant
law, Allstate had a reasonable basis for delaying payments for bodily injury.  Given Thomas=s refusal to
provide additional medical information, Allstate=s  investigation of his bodily injury claim was
reasonable.[6]  The summary judgment proof conclusively
rebutted the claimed absence of a reasonable basis for delaying payment of
bodily injury benefits.  To the extent
Thomas=s article 21.21
claims were based on a theory of unreasonable delay, Allstate conclusively
disproved them.

Thomas=s article 21.21
claims, however, go beyond Allstate=s mere delay in
paying  a claim under the policy.  Instead, similar to the insured in Lane,
Thomas alleged Allstate made a material untrue statement of fact or law and
misrepresented terms and provisions of his policy.  See Lane, 992 S.W.2d at 554.  As a result, Allstate was required to present
evidence in its summary judgment motion establishing that no genuine issue of
material fact exists as to these claims. 
See id.  In focusing solely
on the alleged delay in payment, Allstate did not do so.  Accordingly, we conclude the trial court
erred in granting summary judgment on Thomas=s
misrepresentation claims under the Insurance Code.

The DTPA Claim

Thomas argues the
trial court erred by granting summary judgment on his DTPA claims because
Allstate (1) did not move for summary judgment on those claims and (2) failed
to disprove at least one element of the DTPA causes of action as a matter of
law.  Despite the citation of several
DTPA provisions in his trial court petition and in his appellate brief, Thomas
argues only that Allstate provided no evidence disproving that it violated the
DTPA by engaging in an unconscionable action or course of action.  See Tex.
Bus. & Com. Code Ann. ' 17.50(a)(3)
(Vernon 2002).








In Thomas=s First Amended
Original Petition, his DTPA allegations were identical to his Insurance Code
allegations.   Thomas=s Second Amended
Petition, however, does not contain a list of actions by which Allstate
allegedly violated the DTPA; instead, it sets out only statutory definitions
and provisions.  The factual section of
the Second Amended Petition is virtually identical to the factual section of
the First Amended Original Petition.  As
set forth above, Allstate filed its summary judgment motion before Thomas
amended his petition.

Generally, a trial
court cannot grant summary judgment on a claim that is not specifically
addressed in the summary judgment motion. 
See Chessher v. Southwestern Bell Tel., Co., 658 S.W.2d 563, 564 (Tex. 1983).  However, there are exceptions to this rule
when the newly asserted claims in an amended petition are based on an identical
set of acts or elements alleged in the original petition.  See DeWoody v. Rippley, 951 S.W.2d
935, 942 (Tex. App.CFort Worth 1997, pet. dism=d by agr.); Lampasas
v. Spring Center, Inc., 988 S.W.2d 428, 436B37 (Tex. App.CHouston [14th
Dist.] 1999, no writ).  As evidenced by
the virtually identical statement of facts in the First Amended Original
Petition and the Second Amended Petition, Thomas=s added
unconscionability claim was necessarily based on the same set of facts as the
claims set forth in his First Amended Original Petition.

As discussed
above, Allstate conclusively proved its defense to a bad faith claim.  When a DTPA claim does nothing more than
recharacterize a bad faith claim, defense to the bad faith claim defeats the
DTPA claim.  Woods, 925 F. Supp.
at 1180; Carter, 33 S.W.3d at 373; Lane, 992 S.W.2d at 554; Escajeda,
934 S.W.2d at 408.








On appeal, Thomas
fails to explain why Allstate=s argument and
summary judgment proof addressed to his previously pleaded claim of breach of
the duty of good faith and fair dealing was not broad enough to encompass his
DTPA unconscionability claim.  See
Espeche v. Ritzell, 123 S.W.3d 657, 664 (Tex. App.CHouston [14th
Dist.], 2003, pet. filed) (stating, if motion for summary judgment is
sufficiently broad to encompass later‑filed claims, movant need not amend
motion, and citing Wilson v. Korthauer, 21 S.W.3d 573, 579 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied)).  Given the
preceding authority, the identity of facts alleged in the two petitions, the
general manner in which Thomas pleaded his DTPA claims in the Second Amended
Petition, and his failure in this court to differentiate his DTPA
unconscionability claim from his previously pleaded bad faith claim, we cannot
conclude the trial court erred in granting summary judgment against him on his
DTPA claims.

CONCLUSION

We hold Allstate=s summary judgment
proof conclusively establishes Thomas does not have a claim resting on a theory
of a breach of the duty of good faith and fair dealing.  We therefore affirm the trial court=s take-nothing
summary judgment on Thomas=s statutory claimsCunder the Texas
Insurance Code and the Deceptive Trade Practices ActCthat rest on the
bad faith theory.

We also hold
Allstate=s summary judgment
motion does not establish the absence of a genuine issue of material fact in
relation to Thomas=s claims for misrepresentation under the
Texas Insurance Code.  We therefore
reverse the judgment on those claims, and remand them to the trial court for
further proceedings consistent with this opinion.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed July 15,
2004.

Panel consists of Justices Yates, Anderson, and Hudson.











[1]  We use the
shortened form,  Abad faith claim,@ to
refer to the claim for breach of good faith and fair dealing.





[2]  This request
does not appear to be part of the record on appeal.  The Medical Authorization attached to
Allstate=s subsequent Motion to Compel is discussed below.





[3]  Allstate had
previously filed a traditional motion addressing Thomas=s claims under Texas Insurance Code article
21.55.  On appeal, Allstate represents
the trial court disposed of this motion along with the other two motions.  Disposition of this motion is not at issue on
appeal.





[4]  Given the
separate issues of property damage and bodily injury, Allstate=s alleged admission of 
liability on the property damage claim does not constitute waiver of a
right to judicial determination of the 
bodily injury claim.  Marks
testified it was Anot unusual for property damage in an uninsured
motorist claim to be paid without an uninsured investigation if he has the
coverage, and then the investigation B it=s done for 
customer service reasons.  The
investigation is continued for bodily injury.@





[5]  In Comsys
Information Technology Services, Inc. v. Twin City Fire Insurance Co. and
Specialty Risk Services, Inc., this court held a month-and-a-half delay
between settlement and a coverage opinion was arguably unreasonable and raised
a fact issue about whether the insurer breached its duty to provide a coverage
opinion and/or reservation of rights letter under Article 21.21 of the Texas
Insurance Code.  130 S.W.3d 181, 200
(Tex. App.CHouston [14th Dist.] 2003, no pet. h.).  In Comsys, however, there was a
discrete point, settlement, at which the insurer had a duty to decide
coverage.  See id.  The present case, involving as it does an
ongoing investigation, is distinguishable.





[6]  We do not view
Thomas=s lack of cooperation as an affirmative defense, but
as one factor of several establishing the reasonableness of Allstate=s delay.