NO. 07-05-0386-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 17, 2007
_____

YORKSHIRE INSURANCE CO., LTD. AND
OCEAN MARINE INSURANCE CO., LTD., APPELLANTS

V.

DIATOM DRILLING COMPANY AND EMPLOYER'S
CONTRACTOR SERVICES, INC., APPELLEES
_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,355; HONORABLE JOHN LAGRONE, JUDGE
_____

Before QUINN, C.J., and HANCOCK, J., and BOYD, S.J.[1]

**OPINION**

We grant Diatom Drilling Co. and Employer's Contract Services, Inc.'s motion for rehearing. We withdraw our opinion of May 2, 2007, and substitute the following in its place. As the judgment of May 2, 2007 is not effected by this substituted opinion, we deny the motion for rehearing as to the judgment.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Appellants, Yorkshire Insurance Co., Ltd., and Ocean Marine Insurance Co., Ltd. (collectively, "Insurers"), appeal a summary judgment granted in favor of appellees, Diatom Drilling Co. (Diatom) and Employer's Contractor Services, Inc. (ECS), in Insurers' action for declaratory relief or reformation and the award of attorney's fees to Diatom and ECS. We reverse and render judgment in favor of Insurers. We reverse and remand the award of attorney's fees and costs.

Background

Randall Jay Seger did drilling work for two related companies, Diatom Drilling Co., L.P., and Employer's Contractor Services, Inc. ECS was a corporation established by Diatom's general partner, Cynthia Gillman, to provide oil field services to Diatom and other drilling contractors. On July 13, 1992, while employed by ECS but providing services to Diatom, Randall was killed when a Diatom rig he was working on collapsed. Diatom, who was insured by a Lloyd's of London-type comprehensive general liability (CGL) insurance policy at the time of the accident, notified the subscribing insurers (collectively, "the CGL insurers") of the accident. Insurers were members of this group.

The "cover note" for this CGL policy identified Diatom and ECS as the insureds, provided a maximum of $500,000 of coverage for any one bodily injury accident or occurrence, and contained a "condition," *inter alia*, "Excluding Leased-In Employees/Workers." Sixteen insurers subscribed to this CGL policy with each assuming a proportionate share of the liability coverage provided by the policy. Specifically, Yorkshire assumed 16.472 percent and Ocean Marine assumed 10 percent of the

2

coverage. The standard policy provisions indicate that each of the subscribing insurers' liability is several.

In June of 1993, Randall's parents (the Segers) filed suit against Diatom/ECS and its partners alleging negligence and gross negligence. The CGL insurers were not specifically notified of the suit at the time that it was filed. The suit sat virtually dormant until 1998. In 1998, Diatom/ECS demanded that the CGL insurers provide a defense to the Segers' suit. The CGL insurers refused to provide a defense contending that Randall's death was not covered and that Diatom/ECS failed to provide timely notice of suit.

On March 27, 2001, the Segers' suit against Diatom/ECS was tried. The trial court entered judgment against Diatom/ECS and awarded the Segers $15,000,000, plus pre- and post-judgment interest. Following the entry of this judgment, Gillman contacted the CGL insurers to inquire as to what they intended to do about the judgment. When Gillman received no response, she assigned Diatom's and ECS's rights against the CGL insurers to the Segers. Following the assignment, the Segers filed suit against the CGL insurers seeking damages based on the CGL insurers' wrongful refusal to defend Diatom/ECS and negligent failure to settle the Segers' claim when demand was made within policy limits. Prior to trial on the assigned Stowers action, the Segers settled their claims against all of the remaining solvent CGL insurers, except Yorkshire and Ocean Marine, and the settling insurers were dismissed from the suit. Insurers filed a third-party claim for declaratory relief or for reformation of the CGL policy against Diatom and ECS. The present appeal relates to this third-party action.

Both Diatom/ECS and Insurers filed motions for summary judgment relating to Insurers' declaration and reformation actions. The trial court granted Diatom/ECS's motion and denied Insurers' motion, severed the third-party claims from the Segers' <u>Stowers</u> action, and ordered that the issue of attorney's fees be set for a future hearing. On April 21, 2006, the trial court entered final judgment in the severed third-party action consistent with the order discussed above and awarded Diatom/ECS $68,385 for attorney's fees through trial.

Insurers present seven issues on appeal. Their first issue contends that the trial court erred in denying Insurers' summary judgment on the declaratory judgment action. By their second and third issues, Insurers contend that, if coverage for Randall Seger's death is found, the trial court erred in not reforming the policy to exclude the claim. By their fourth issue, Insurers contend that the trial court erred in sustaining Diatom/ECS's assertion of privilege relating to certain documents. By their fifth issue, Insurers contend that the trial court erred in awarding Diatom/ECS attorney's fees because there was no basis for judgment and no evidence to support the amount awarded. Insurers' sixth issue is a general assignment of error in the trial court's granting of summary judgment. <u>See</u> <u>Malooly Bros., Inc. v. Napier</u>, 461 S.W.2d 119, 121 (Tex. 1970). Finally, by their seventh issue, Insurers contend that the trial court erred in granting Diatom/ECS's evidentiary objections and in denying objections made by Insurers. Because we conclude that the declaratory judgment on coverage issue is dispositive, we will address the other issues raised by Insurers in a cursory manner.

Coverage

The trial court granted summary judgment in favor of Diatom and ECS on Insurers' declaratory judgment action seeking a declaration that injury and death claims made by employees that were leased by ECS to Diatom were specifically excluded by the CGL policy. By their sixth issue, Insurers generally challenge the trial court's grant of summary judgment and, by their first issue, expressly challenge the denial of their summary judgment motion. Insurers contend that the CGL policy unambiguously excludes coverage for injury and death claims made by ECS employees leased in to Diatom, such as the claims asserted by the Segers. Further, Insurers contend that their construction of the exclusion is bolstered when the circumstances surrounding the policy's formation are considered. Diatom/ECS contend that the trial court did not err because declaratory relief was unavailable to Insurers because Insurers sought to establish their construction of the exclusion as a defense to the Segers' claim. Diatom/ECS contend, in the alternative, that Insurers produced no evidence that the Segers' claim was excluded by the CGL policy.

When both parties to a suit move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one party summary judgment and denies the other, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial judge should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). We review a summary judgment *de novo* to determine whether the prevailing party has established its right to summary judgment as a matter of law. See Dallas Cent.

5

Appraisal Dist. v. Cunningham, 161 S.W.3d 293, 295 (Tex.App.–Dallas 2005, no pet.). In reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. See City of Keller v. Wilson, 168 S.W.3d 802, 824-25 (Tex. 2005).

Initially, Diatom/ECS contend that the trial court could have properly granted summary judgment on Insurers' declaratory judgment action based on declaratory relief being unavailable. Diatom/ECS cite Howell v. Mauzy, 899 S.W.2d 690, 706 (Tex.App.–Austin 1994, writ denied), for the general rule that declaratory judgments are not available to settle disputes already pending before the court. However, the Howell court goes on to state that, "A court may allow a declaratory-judgment counterclaim, however, if it is something more than a mere denial of the plaintiff's claim and has greater ramifications than the original suit." Id. Looking specifically to the relief sought by Insurers in their counterclaim for declaratory relief, Insurers sought a declaration that "on the date of Randall Seger's death, the operative insurance documents excluded liability for injury or death to 'leased-in employees/workers' . . . ." Insurers were entitled to seek a declaration regarding the CGL policy's coverage independent of the Segers' Stowers action and the declaration sought does not merely deny the Segers' claim. In fact, the declaration sought requests a construction of the "leased-in employee/worker" exclusion contained in the CGL policy, an issue which would not necessarily be reached in the Segers' Stowers

6

claim.[2] Thus, we conclude that declaratory judgment regarding construction of the leased-in worker exclusion was available to Insurers.

Insurers sought a declaration of the proper construction of the cover note's condition "Excluding Leased-In Employees/Workers." The CGL policy includes no definitions relating to this exclusion. According to Insurers, a standard "leased worker" exclusion was not established until 1993. Insurers contend that the proper construction of the exclusion is that the CGL insurers would not be liable for claims made by workers that were "leased-in" to Diatom. At the time of the formation of the CGL policy and through its effective period, the record reflects that all of Diatom's drilling workers were leased in from ECS. Insurers contend that the plain language of the exclusion and the circumstances surrounding the formation of the CGL policy evidence that it was always Diatom/ECS's intent to exclude injury and death claims made by an ECS employee leased to Diatom. Diatom/ECS contend that any declaration that the "Leased-In Employees/Workers" exclusion limited liability for injury claims would require the trial court to add to the language of the contract.

The interpretation of insurance policies is governed by the same rules of construction applicable to other written contracts. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995). In construing a written contract, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Terms in an insurance contract will be given

---

[2] By way of example, if the Segers are able to establish that Insurers failed to meet the exceptions to the general prohibition against unauthorized insurers being allowed to rely on their contractual defenses, the determination of whether the CGL policy specifically excluded claims by leased-in employees/workers would not be reached.

7

their ordinary meaning unless the policy shows that the words were meant in a technical or different sense. Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex. 1979). We must read all parts of the contract together and must strive to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998). If terms in the contract can be given a definite or certain legal meaning, they are not ambiguous and the court will construe the contract as a matter of law. Coker, 650 S.W.2d at 393. However, if, after applying the rules of construction identified above, an insurance policy remains ambiguous, we are to construe the language in a manner that favors coverage. Beaston, 907 S.W.2d at 433.

Diatom/ECS contends that the leased-in worker exclusion is ambiguous because the condition could reasonably exclude (1) leased-in workers from being "insureds" under the policy, (2) claims made for damages caused by leased-in workers, (3) claims made by leased-in workers for injury or death, or (4) claims made by families of leased-in workers for wrongful death. Reading all of the parts of the policy reveals that every exclusion in the contract excludes coverage for claims of insureds' liability related to or arising from the event or persons identified by the various exclusions. Thus, to harmonize the terms of the CGL policy, we conclude that the "Excluding Leased-In Employees/Workers" condition excludes claims against Diatom/ECS related to or arising from "Leased-In Employees/Workers."

However, as the CGL policy does not define the phrase "Leased-In Employee/Worker," we must look to the ordinary meaning of those words to determine the

8

scope of the exclusion. See Sec. Mut. Cas. Co., 584 S.W.2d at 704. The ordinary meaning of "lease" is an agreement for possession or use of property for a specified period or at will in exchange for a specified rent or compensation. See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 798 (Frederick C. Mish, ed., 11th ed. 2003). The ordinary meaning of "worker" is a person that "exerts strength or faculties to do or perform something." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1442-43 (Frederick C. Mish, ed., 11th ed. 2003). The ordinary meaning of the word "in," when used as a modifier, is directed toward some destination or place. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 627 (Frederick C. Mish, ed., 11th ed. 2003). Therefore, we conclude that, applying the ordinary meaning of the words used in the CGL policy and striving to give meaning to every part thereof, the condition "Excluding Leased-In Employees/Workers," as a matter of law, unambiguously excludes from coverage all claims for a named insured's liability for bodily injury or property damage brought by or on behalf of persons that perform work for the insured under an agreement with another allowing temporary use of the worker, even though the leased worker would not be an employee of insured.[3]

We reverse the trial court's summary judgment in favor of Diatom and ECS and render summary judgment declaring that, on the date of Randall Seger's death, the CGL policy at issue in this appeal excluded liability for injury or death to leased-in employees/workers as that phrase is defined above.

---

[3] We focus on the term "worker" in an effort to harmonize the provisions of the policy. Claims for bodily injury by a leased-in worker that concurrently holds the status of an employee would be covered under the standard employee exclusion contained in the CGL policy. Thus, an exclusion for a leased-in employee would be redundant.

9

Other Issues

Insurers' second through fourth issues in this appeal are made contingent on our affirming the trial court's grant of summary judgment on the declaratory judgment action. As we have reversed the trial court's grant of summary judgment and rendered judgment in favor of Insurers, we need not address these issues.

By their fifth issue, Insurers contend that Diatom and ECS are not entitled to attorney's fees. As we have rendered declaratory judgment in favor of Insurers, we reverse that portion of the judgment awarding Diatom and ECS attorney's fees and remand this issue to the trial court for a determination of whether attorney's fees should be awarded and, if so, the appropriate amount of the award. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997).

Finally, neither party addressed Insurers' seventh issue relating to the admission or exclusion of evidence. As a result, we conclude that this issue has not been adequately briefed and is, therefore, waived. See TEX. R. APP. P. 38.1(h); Gen. Serv. Comm. v. Little-Tex. Insul. Co., 39 S.W.3d 591, 604 n.1 (Tex. 2001); Fredonia State Bank v. Am. Life Ins. Co., 881 S.W.2d 279, 284-85 (Tex. 1994). It appears that Insurers' issue relates to the trial court's sustaining Diatom/ECS's objection to Insurers' evidence submitted in opposition to Diatom/ECS's motion for summary judgment. However, we have concluded that the trial court erred in granting summary judgment to Diatom/ECS without considering this excluded evidence. Thus, we conclude that this waiver is of no effect in our resolution of this appeal.

Conclusion

We reverse the trial court's summary judgment and render judgment declaring that, on the date of Randall Seger's death, the CGL policy at issue in this appeal excluded liability for injury or death to leased-in employees/workers. We also reverse the trial court's award of attorney's fees in this cause and remand for further proceedings consistent with this opinion.


Mackey K. Hancock
Justice