**Catherine WEIDNER, Plaintiff,**

v.

**NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, Defendant,**

**and**

**Jerry Dickerson, Intervenor–Plaintiff Jerry Dickerson,**

v.

**Nationwide Property & Casualty Insurance Company, Defendant.**

**CIVIL ACTION No. 4–13–cv–263**

United States District Court, E.D. Texas, Sherman Division.

Signed November 15, 2014

Filed November 17, 2014

Joshua P. Davis, Josh Davis Law Firm,
Kelly Earl Cook, Brad Thomas Wyly,

Wyly & Cook, LLP, Houston, TX, for Plaintiff.

Joshua P. Davis, Josh Davis Law Firm, Houston, TX, for Intervenor-Plaintiff Jerry Dickerson.

Patrick Michael Kemp, Robert R. Russell, Segal McCambridge Singer & Mahoney, Ltd., Austin, TX, for Defendant.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

RON CLARK, United States District Judge

After the parties closed their cases at the bench trial in this matter, the court announced findings of fact and conclusions of law on most of the issues along with a summary of the evidence and reasons for each finding. The court reserved its findings on two issues, to allow counsel to provide briefing on them before the court made its decision. One issue was raised after the court announced its findings, by counsel for Plaintiff Weidner, and dealt with her claim that the intentional act exclusion did not apply to her. The other issue not discussed by the court on the record went to the amount of damages.

This order will first restate and clarify the findings of fact and conclusions of law on the issues considered at the close of the evidence, relying upon the evidence admitted and on the reasons, legal analysis and case citations stated on the record. In the event of any conflict, the findings and conclusions as stated in this order will control over findings or conclusion stated on the record. Having received briefing from the parties, and having reviewed all of the evidence admitted, the court will then state its findings and conclusions, and the reasons therefore, as to the remaining issues. For convenience and clarity, the findings and conclusions will be organized by the legal issue to which they pertain. As this is a diversity case, the court must apply Texas law, and where that law is not clear, must make an *"Erie* guess" as to how Texas Courts would decide the issue. *See Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir.2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

In analyzing the findings and conclusions, it is helpful to understand the position of the parties, as presented in the final pretrial order. The parties stipulated in the pretrial order that Ms. Weidner and Mr. Dickerson were insureds under the policy, that the fire occurred, that a claim was filed and denied, and that Mr. Dickerson was the only person present at the property when the property occurred. [Doc. # 101, p. 3–4]. The pretrial order's statement of contested issues of fact and law included an issue on whether the "concealment and fraud" provision of the policy precluded coverage. [Doc. # 101, p. 5].

The statement of contested issues also included the elements Nationwide would have to prove to establish arson under Texas law. Nationwide's position at trial was that if it established arson it would be entitled to judgment. However, the list of contested issues of fact and law included: "The parties dispute whether the fire at issue was set by or at the direction of Plaintiffs, and thus whether the Policy's intentional act exclusion applies to preclude coverage." The application of this exclusion requires more than a mere finding of arson; under Texas law, the court must interpret the precise language of the provision and determine whether it applies to both of the insureds. *See, e.g., Tex. Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873, 878 (Tex.1999).

As detailed below, the court finds that Nationwide established that the fire resulted from arson. The court also finds that Nationwide met its burden of proving that Mr. Dickerson violated the Concealment or Fraud provision, and therefore, the Con-

cealment or Fraud provision precludes coverage as to both insureds.

## ARSON

 Under Texas law, arson may be, and usually is, proved by circumstantial evidence establishing: (A) that the fire was incendiary in nature; (B) that the insured had an opportunity to set the fire, or other circumstances link the insured to the fire; and (C) that the insured had a motive to set the fire or cause it to be set. *State Farm Fire & Cas. Ins. Co. v. Vandiver*, 970 S.W.2d 731, 736 (Tex.App.–Waco 1998, no pet.); *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 282 (Tex.App.–San Antonio 1993, writ denied). Based on all the evidence admitted and the reasons outlined on the record, the court makes the following findings of fact regarding Nationwide's claim that arson was the cause of the fire.

### A. The Fire Was Incendiary in Nature.

(1) The fire had two points of origin or ignition;

(2) An accelerant was used at both of these points of origin or ignition;

(3) An explosion was not the cause of the fire;

(4) Neither faulty wiring nor faulty electrical equipment was the source of ignition at either of the two points of origin;

(5) The holes in the CSST gas line were made after the fire and were not the result of lightning;

(6) Lightning was not the cause of the fire;

(7) The fire was not the result of an accident;

(8) The fire that is the subject of the insurance claim, which is the basis of this lawsuit, was incendiary in nature.

### B. Mr. Dickerson Had the Opportunity to Set the Fire; Other Circumstances Link Mr. Dickerson and Ms. Weidner to the Fire.

(1) As stipulated by Plaintiffs, Mr. Dickerson arrived at the property at 10:30 a.m., which was before the fire started; he was at the fire continuously until the fire trucks arrived at approximately 12:50 p.m.; and he was the only person present at the property during that time.

(2) The doors were locked when the fire started.

(3) Ms. Weidner and Mr. Dickerson were the only persons living at the house, and there was no claim or evidence that anybody else had keys to the house.

(4) Mr. Dickerson's experience as both an electrician and an insurance adjuster gave him the knowledge needed to set, and to attempt to conceal, the origin of the fire.

(5) Mr. Dickerson had an opportunity to set the fire at issue in this case. Nationwide has not shown by a preponderance of the evidence that Ms. Weidner had an opportunity to set the fire in question.

(6) The court finds that other circumstances link Mr. Dickerson to the fire. In this regard, the court makes the following additional findings:

 a) The holes found in the CSST gas line were made after the fire, and required specialized knowledge that Mr. Dickerson had, namely: knowledge of the purpose of such line; knowledge that lightning could cause small holes in such a line; and knowledge of how to make such holes with an electric current and a probe;

 b) Other circumstances that link Mr. Dickerson to the fire include his

misrepresentations about prior fire losses, his evasive and incomplete answers when questioned after the fire and his voluntary statements to the Nationwide agent about mineral spirits not being present in the house. (Mineral spirits was the accelerant identified in the expert report that the parties stipulated as correct.)

(7) The court finds that, to a lesser degree, but still by a preponderance of the evidence, some circumstances link Ms. Weidner to the fire. Supporting this finding are the following factual findings:

a) Ms. Weidner's misrepresentation on the application before the fire;

b) Her misrepresentation about the phonograph records after the fire, which goes to her credibility about the matter;

c) Her silence during the joint interview with the Nationwide agent when Mr. Dickerson denied prior fire losses, of which it is more likely than not she knew; and

d) Ms. Weidner had been married to Mr. Dickerson for twenty-three years [1] which raises a reasonable, although weak, inference that they would have discussed the possibility of setting the fire. The court finds that the circumstantial evidence linking Ms. Weidner to the fire is significantly weaker than that linking Mr. Dickerson.

## C. Mr. Dickerson and Ms. Weidner Had a Motive to Set the Fire or Cause It to Be Set.

(1) As stipulated by Plaintiffs, and as supported by the evidence about their finances, lack of savings, and lack of employment, Plaintiffs were experiencing financial distress at the time of the fire sufficient to constitute financial motive to set the fire at issue or to cause it to be set.

(2) Plaintiffs were behind on the property taxes on the property.

(3) There was a mortgage balance of approximately $45,000.

(4) Plaintiffs were three months behind on their mortgage payments, which were $535 per month.

(5) Plaintiffs had received notice of foreclosure two months before the fire.

(6) There was no evidence, such as the presence of items of sentimental value to Mr. Dickerson, to weigh against the financial motives he had for setting the fire or causing it to be set.

(7) The court finds there were photographs supporting Ms. Weidner's testimony that at some time prior to the fire the house contained keepsakes and family memorabilia of sentimental value to her, including two service members' funeral presentation flags, a grandfather clock etc., which would tend to make it less likely that she would have burned the house. This makes the issue of motive on the part of Ms. Weidner a close question, as Nationwide made no effort to show that any of these items were not present at the time of the fire.

(8) Based on the evidence and findings 1 through 6 above, the court ultimately finds that Mr. Dickerson had a motive to set the fire. Although the question is closer because of the issue of the absence versus the presence of items of sentimental value,

1. On cross-examination, Jerry Dickerson testified that he "took a[sic] oath before a preacher 23 years ago that [he] would—that [he] was married to her until death do us part."

the court finds that the financial pressures set out in findings 1 through 5 are sufficient to find by a preponderance of the evidence that Ms. Weidner had a motive to set the fire.

In sum, the court finds that the fire that caused the loss was the result of arson.

## "INTENTIONAL ACTS" EXCLUSION

After the court announced findings and conclusions, counsel for Ms. Weidner asked for findings on what Mr. Cook termed "the innocent spouse exception," which Mr. Wyly more properly identified as an issue under the policy's intentional act exclusion. The court spent some time discussing whether this theory of recovery was waived. *See* Docs. 46, 52, 53, 61, 62, 70, 79, 118, 119, 121. However, the court now finds that Plaintiff was not attempting to raise a new theory of recovery but was asking for findings and conclusions based on the plain language of the intentional acts exclusion. *See* Doc. 119; *See also Tex. Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873, 878 (Tex.1999) (noting that in an arson case, an innocent spouse may have a *contractual right* to recover his or her one-half interest in the policy benefits).

The "Intentional Acts" exclusion in the policy states:

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another cause or event contributed concurrently or in any sequence to cause the loss.

f) Intentional acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. *This exclusion applies only to the insured who committed or directed the act causing the loss.*

Pl.Ex. 1, at Policy 015 (emphasis added). Nationwide's position is that if it can show the fire resulted from arson, this exclusion applies to prevent coverage as to both insureds, and judgment should be entered for Nationwide. As detailed above, the court found that the fire was the result of arson, but a finding of arson does not end the analysis of coverage under the Intentional Acts Exclusion.

 Because this is case is an insurance coverage dispute under Texas law, Nationwide had the burden of proving the facts that would justify the application of the intentional acts exclusion. *Murphy,* 996 S.W.2d at 879. Insurance policies are interpreted according to general contract interpretation rules. *Id.* A court's goal should be "to give effect to the written expression of the parties' intent, viewing the contract in its entirety, consistent with applicable rules of law." *Id.* In determining an insured's recovery in relation to an insurer's arson defense, a court must consider the contractual rights of the parties under the policy. *See id.* at 878. ("A court should not decide the question of public policy [of the arson defense] without first determining the contractual rights of the parties under the policy."). Therefore, the court must determine the legal effect of its finding of arson by Mr. Dickerson in light of the language of the "committed or directed the act causing the loss" provision of the exclusionary clause.

In this regard, based on all of the evidence and the findings and reasons set out in this order and on the record, the court makes the following findings of fact:

(1) The fire that caused the loss was set by Mr. Dickerson.

(2) Ms. Weidner did not set the fire.

(3) Ms. Weidner did not direct[2] Mr.

---

**2.** As no party has claimed that "directed" is ambiguous; the court looks to the word's

Dickerson, or anybody else, to set the fire that caused the loss.

(4) Both Ms. Weidner and Mr. Dickerson are insureds under the policy. *See* Pl.Ex. 1, at 5, 7 (" 'INSURED' means **you** and the following if residents of **your** household ... your relatives ... any other person under age 21 and in the care of you or your relatives.") (emphasis added).

The court has found that Mr. Dickerson set the fire, so, as a matter of law, the intentional act exclusion would preclude coverage as to him. However, the court has also found that Weidner did not set the fire (committed the act causing the loss) or direct Mr. Dickerson or anybody else to set the fire.

Under old Texas law, the deliberate destruction of jointly-owned property by a co-insured barred recovery by another innocent co-insured. *Murphy*, 996 S.W.2d at 875. That rule was changed in a case where the court held that the wife could recover her share of the insurance proceeds after her husband destroyed their mobile home in a rage over a divorce petition. *Kulubis v. Tex. Farm Bureau Underwriters*, 706 S.W.2d 953, 955 (Tex. 1986). In *Kulubis*, the Texas Supreme Court decided to follow the trend in other states and held that the innocent co-insured would not be barred. 706 S.W.2d at 954–55.

Later arson cases involving community property attempted to limit the *Kulubis* holding. *See, e.g., Webster v. State Farm Fire & Cas. Co.*, 953 F.2d 222, 223–24 (5th Cir.1992); *Norman v. State Farm Fire &*

*Cas. Co.*, 804 F.2d 1365, 1366–67 (5th Cir. 1986). However, the Texas Supreme Court has rejected that approach. *See Murphy*, 996 S.W.2d at 877–78.[3] The Supreme Court stated that such cases "share a common shortcoming. They all focus on conflicting policy considerations without first evaluating the contract language." *Id.* at 879. Such an evaluation involves fairly standard rules of contract construction.

"Terms in an insurance contract will be given their ordinary meaning unless the policy shows that the words were meant in a technical or different sense." *Yorkshire Ins. Co. v. Diatom Drilling Co.*, 280 S.W.3d 278, 282 (Tex.App.–Amarillo 2007, no pet.). "Exceptions and limitations in an insurance policy are strictly construed against the insurer." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 701 (5th Cir. 1996); *see also Yorkshire*, 280 S.W.3d at 282 (noting that if language in an insurance policy is ambiguous, the language is to be construed in a manner that favors coverage).

Nationwide's policy specifically states that the intentional act exclusion "applies only to **the insured** who **committed** or **directed** the act causing the loss." Def. Ex. 1, at p. Policy 015 (emphasis added). Nationwide has access to competent and experienced counsel. It could presumably have written its policy so that coverage was excluded as to all insureds, if any insured committed or directed the act causing the loss, or if any insured commit-

ordinary meaning. Merriam–Webster defines "direct" as "to regulate the activities or course of." *Webster's Third New International Dictionary* 640 (2002).

**3.** This court's reliance on *Murphy*, which was decided in 1999, as a basis for its *Erie* evaluation of how the present case would be decided

by a Texas court is supported by the fact that the Texas Supreme Court has more recently cited Murphy with approval in answering a certified question from the Fifth Circuit Court of Appeals concerning the interplay of public policy and insurance contract language. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 674 (Tex.2008).

ted arson. *See Murphy*, 996 S.W.2d at 881–882 ("The law ... allows insurance carriers to use forms adopted by a national organization of insurance carriers, provided they are filed and approved by the Insurance Commissioner. Such a form could include an intentional loss provision that voids coverage to *all* insureds if *any* insured intentionally destroys the covered property ..."). But, under Texas law, it is not up to this court to base its decision on what the policy language might have been.

Following the guidance of Texas courts in construing the insurance policy language and based upon the findings of fact set out above, the court concludes as a matter of law that the intentional acts exclusion would not preclude Ms. Weidner from a recovery. However, because Texas is a community property state, Ms. Weidner would not recover 100% of the proceeds the policy allows.

There is a strong presumption that property owned during a marriage is community property, and if the evidence shows that separate property and community property are commingled so as to defy segregation and identification, the community property presumption prevails. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex.1987). *See also Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965) (noting that all property possessed at time of dissolution of marriage is presumed to be commu-

nity property and to show otherwise, the spouse must trace and clearly identify the property claimed as separate property).

While there was some confusion based on the presence of separate counsel, the testimony of Mr. Dickerson that he was married to Ms. Weidner for twenty-three years was uncontroverted. Mr. Dickerson testified that he and Ms. Weidner were married at the time of the April 2011 fire. Jerry Dickerson also testified, "She's my bride," and "I get belligerent you can ask my bride." At no point during the trial were the words "ex-husband," "ex-wife," or "divorce" used, and at no point during the trial was a divorce decree entered into evidence.[4] *See U.S. Fidelity & Guar. Co. v. Henderson*, 53 S.W.2d 811, 813 (Tex.Civ. App.–Amarillo 1932, no writ) ("While a ceremonial marriage may be established by general repute, by circumstances, by the estimony of a witness, and also by hearsay, such testimony is not admissible to establish the fact of a divorce.").

Based on the all of the evidence admitted, the court finds that:

(1) Mr. Dickerson and Ms. Weidner were married at the time of the fire.

(2) There is no evidence in the record that Mr. Dickerson and Ms. Weidner have been divorced.

(3) Mr. Dickerson and Ms. Weidner both contributed to mortgage and

---

**4.** This court has a clear and specific rule regarding admission of evidence at trial, which was explained to parties at the Final Pretrial Conference. As the court explained, if no objection had been made to an exhibit in advance of Final Pretrial, or if the court overruled the objection, the exhibit is *admissible.* The court further explained that although an exhibit is admissible, it is not *admitted* until after the exhibit is presented through a witness in front of the court. Parties were directed to keep track of the exhibits that they used during trial, and at the end of each day, check with the deputy clerk to be sure that her list of admitted exhibits is the same as that of the parties. In this court, the deputy clerk's list of admitted exhibits controls which exhibits have and have not been admitted. *See* Pl.Ex. List Admitted at Trial, Doc. 114; Def. Ex. List Admitted at Trial, Doc. 116. The purpose of this procedure is to avoid the unfortunate practice of simply dumping steaming mounds of exhibits on the court, for the judge and law clerk to shovel through in a blind search for kernels of relevant evidence, and then positing error on the basis of phrase in a document that evidently was not worth discussion by a witness.

tax payments on the property in question. Mr. Dickerson testified that "[t]he mortgage payment came out of [his] checking account, direct withdrawal on the Bank of America." Mr. Dickerson also testified that he "assists with [the mortgage payments] when [Ms. Weidner] has not the funds to do so."

The court therefore concludes that under Texas law, Ms. Weidner would be entitled to recover her one-half undivided interest in the proceeds under the Nationwide policy, but the "Intentional Acts" exclusion would have precluded coverage as to Mr. Dickerson. *See also Murphy,* 996 S.W.2d at 881 ("We reaffirm our long-standing public policy preventing an arsonist from benefitting from fraud by denying recovery of his or her own one-half interest in the claim against the insurer," but "such public policy does not overcome an innocent spouse's contractual right to recover her or his one-half interest in the policy benefits.").

## "CONCEALMENT OR FRAUD" PROVISION

The Concealment or Fraud provision states,

### 2. CONCEALMENT OR FRAUD

a) This policy is void as to **all insureds if you or any other insured** has intentionally misrepresented any material fact or circumstance which would have caused us not to renew this policy.

b) This policy does not provide coverage for **all insureds if you or any other insured,** either before or after a loss, has:

(1) intentionally concealed or misrepresented any material fact or circumstance; or

(2) committed any fraud or made false statements relating to such loss.

Pl.Ex. 1, p. Policy 037. At trial, Nationwide argued that the "Concealment or Fraud" Provision precluded coverage as to both Mr. Dickerson and Ms. Weidner because (1) Ms. Dickerson violated the provision by misrepresenting to Nationwide that only she would live in the home that she listed on her application for insurance; (2) after the fire, Mr. Dickerson misrepresented to Nationwide that he had suffered no prior fire losses; (3) after the fire, Ms. Weidner misrepresented to Nationwide the value of the loss of her phonographic records; (4) after the fire, Mr. Dickerson misrepresented his lack of knowledge of the cause of the fire by signing the proof of loss form and submitting it to Nationwide; and (5) after the fire, during an investigatory interview by Rodney Chapman, Mr. Dickerson misrepresented his lack of knowledge of the cause of the fire by telling Mr. Chapman that he was unaware of the cause of the fire. The court considers each of Nationwide's arguments in turn.

### A. Ms. Weidner's Misrepresentation on the Policy Application

Based on all the evidence admitted and the reasons outlined on the record, the court makes the following findings of fact regarding Nationwide's defense that representations of Ms. Weidner, made in connection with issuance of the policy would allegedly have caused Nationwide to refuse to issue or renew the policy:

(1). In her application for insurance, Plaintiff Catherine Weidner represented to Defendant Nationwide that her home would only have one occupant.

(2) This representation was false.

(3) Nationwide relied on this representation.

(4) Weidner made this representation with the intent to deceive Nationwide.

(5) Although the evidence should have been easily available, had it existed, Nationwide did not show, let alone prove by a preponderance of the evidence, that this representation was likely to have caused Nationwide to refuse to issue or renew the policy, or even to raise the premium.[5]

The court concludes as a matter of law that Ms. Weidner's misrepresentation prior to the fire was not proven to be material, and is therefore not a basis for Nationwide to deny coverage under the "concealment or fraud" provision of the policy. *See Medicus Ins. Co. v. Todd,* 400 S.W.3d 670, 676–79 (Tex.App.–Dallas 2013, no pet.); *see also Darby v. Jefferson Life Ins. Co.,* 998 S.W.2d 622, 628 (Tex.App.–Houston [1st Dist.] 1995, no writ) (holding that a "representation is material if it *actually* induces the insurance company to assume the risk." *Westchester Fire Ins. Co. v. English,* 543 S.W.2d 407, 412 (Tex. Civ. App.–Waco 1976, no writ) (emphasis added).

## B. Mr. Dickerson's Misrepresentation, Made After the Fire, About Having No Prior Fire Claims

Based on all the evidence admitted and the reasons outlined on the record, the court makes the following findings of fact and conclusions of law regarding Nationwide's defense that the misrepresentations Mr. Dickerson made after the fire about his prior fire claims justify its denial of coverage under the policy:

(1) Mr. Dickerson, when asked by a Nationwide agent after the fire, denied that he had experienced prior fire losses and failed to disclose prior fire losses.

(2) This representation was false.

(3) Dickerson admitted that he knowingly did not disclose his prior fire losses.

(4) Dickerson made this representation with the intent to deceive Nationwide.

(5) Nationwide relied on the misrepresentation, which caused, at most, a short delay.

(6) Nationwide failed to show that this misrepresentation prejudiced it in some way.

The court concludes as a matter of law that Mr. Dickerson's misrepresentation about prior fire losses, which he made after the fire, is not a basis for Nationwide to deny coverage under the "concealment or fraud" provision of the policy. *See Prog. Cty. Mut. Ins. Co. v. Trevino,* 202 S.W.3d 811, 816 (Tex.App.–San Antonio 2006, pet. denied) (even where there is no evidence of compliance with cooperation clause, insurer must prove prejudice); *see also* the cases cited above on materiality.

## C. Ms. Weidner's Misrepresentation, Made After the Fire, About Her Phonograph Records

Based on all the evidence admitted, and on the reasons outlined on the record, the court makes the following findings of fact and conclusions of law regarding Nationwide's defense that Ms. Weidner's misrep-

5. A party must produce evidence, if available, to substantiate its claim, or the party fails to prevail on its claim. *See, e.g., United States v. Narviz–Guerra,* No. 97–50811, 1998 WL 611205, at *1 (5th Cir. Aug. 17, 1998) (holding that a party fails to support her claim when she offers only her own speculation, hearsay from unknown sources, and references to evidence not in the record); *Weekes Marine, Inc. v. Stokes,* No. 2:11–CV–112–KS–MTP, 2012 WL 315990, at *2 (S.D.Miss. Feb. 1, 2012) (noting that if evidence is not in the record, the court assumes that it does not exist).

resentations that she made about her phonograph records after the fire justify its denial of coverage under the policy:

(1) After the fire, Ms. Weidner misrepresented to Nationwide that she lost forty-five boxes of phonograph records worth $20,000.

(2) The misrepresentation was not accepted by Nationwide, as the claim for personal property never got past the review phase; Nationwide failed to meet its burden of proving that the conduct was "willful and purposeful, and was substantially material in the circumstances." *Badger Mut. Ins. Co. v. Morgan,* 313 F.2d 783, 785 (5th Cir.1963) (citation omitted).

The court concludes as a matter of law that Ms. Weidner's misrepresentation about the number of boxes of phonograph records she lost, which she made after the fire, is not a basis for Nationwide to deny coverage under the "concealment or fraud" provision of the policy. *See also* cases cited above regarding materiality.

**D. Mr. Dickerson's Misrepresentation of His Lack of Knowledge of the Cause of the Fire, in Telling Mr. Chapman that he was Unaware of the Cause of the Fire During the Nationwide Investigatory Interview**

Based on all the evidence admitted, and on the reasons outlined on the record, the court makes the following findings of fact and conclusions of law regarding Nationwide's defense that Mr. Dickerson's misrepresentation of his lack of knowledge of the cause of the fire, in telling Mr. Chapman that he was unaware of the cause of the fire during Nationwide's investigatory interview:

(1) During Nationwide's investigatory interview, Mr. Chapman asked Mr. Dickerson if Mr. Dickerson "[had]

any idea what started the fire." Def. Ex. 9, at p. 19.

(2) Mr. Dickerson responded, "no." Def. Ex. 9, at p. 19.

(3) Mr. Chapman also asked whether the fire department had "given ... any indication of what they felt may have started the fire." Def. Ex. 9, at p.1 9.

(4) Mr. Dickerson responded that the fire department "made implication that there was accelerant." Def. Ex. 9, at p. 19.

(5) Near the end of the interview, Mr. Chapman asked if everything Mr. Dickerson "had stated in the conversation [was] true and correct to the best of [his] knowledge." Def. Ex. 9, at p. 21.

(6) Mr. Dickerson responded "Yes." Def. Ex. 9, at p. 21.

(7) As discussed above, Mr. Dickerson set the fire that caused the loss, so Mr. Dickerson *did* know what started the fire.

(8) Nationwide proved by a preponderance of the evidence that Mr. Dickerson made false statements in his interview with Mr. Chapman.

■ The court concludes as a matter of law that Mr. Dickerson's deceptive actions in (1) intentionally causing the loss of the insured home; and (2) not disclosing to Mr. Chapman in the investigatory interview that he caused the fire that caused the loss was a fraud on Nationwide relating to the insurance and the loss. *See McEwin v. Allstate Tex. Lloyds,* 118 S.W.3d 811, 816 (Tex.App.–Amarillo 2003, no pet.). Because of Mr. Dickerson's fraud, the Concealment or Fraud provision voids the policy as to both Ms. Weidner and Mr. Dickerson. *Id.* The court concludes that this misrepresentation is a basis for Nationwide to deny coverage to

both Ms. Weidner and Mr. Dickerson under the policy.

### E. Mr. Dickerson's Misrepresentation of His Lack of Knowledge of the Cause of the Fire, in Signing and Submitting the Sworn Proof of Loss Form to Nationwide

Based on all the evidence admitted, and on the reasons outlined on the record, the court makes the following findings of fact and conclusions of law regarding Nationwide's defense that Mr. Dickerson's misrepresentation about his lack of knowledge of the cause of the fire, which he made by signing and submitting the sworn proof of loss form to Nationwide, justify its denial of coverage under the policy:

(1) On September 23, 2011, Mr. Dickerson signed an amended sworn statement in proof of loss, which he submitted to Nationwide. Def. Ex. 4.

(2) By signing the sworn statement, Mr. Dickerson swore that, "The said loss did not originate by any act, design, or procurement on the part of your insured or its affiliates." Def. Ex. 4.

(3) As discussed above, Mr. Dickerson set the fire that caused the loss, so the loss *did* originate by act, design, or procurement, on the part of Mr. Dickerson. *See McEwin*, 118 S.W.3d at 816.

The court concludes as a matter of law that Mr. Dickerson's deceptive actions in (1) causing the house to be intentionally burned and (2) filing a loss report without disclosing his complicity in the fire to Nationwide, were a fraud on Nationwide. *See id.* at 817. Because of Mr. Dickerson's fraud, the Concealment or Fraud provision voids the policy as to both Ms. Weidner and Mr. Dickerson. *Id.* at 816. The court concludes that this misrepresentation is a

basis for Nationwide to deny coverage to both Ms. Weidner and Mr. Dickerson under the policy.

### DAMAGES

Based on the foregoing findings of fact and conclusions of law, the "Concealment or Fraud" provision bars recovery by either Ms. Weidner or Mr. Dickerson. However, for the purpose of a complete record, the court makes the following findings as to damages.

The parties disagreed as to whether damages should be calculated on the actual cash value (ACV) or the replacement cost value (RPCV) of the personal property and the dwelling. In the Order on Damages, the court concluded that based on the facts of the case and the terms of the policy, damages, if awarded, would be based on actual cash value.

Plaintiffs introduced, and the court admitted into evidence, Nationwide's estimate for the loss to the dwelling (Pl.Ex. 5) and Nationwide's estimate for loss of contents (Pl.Ex. 6). Nationwide asserts that these are irrelevant and that it should not be required to make any payment at all. However, Nationwide did not dispute its own estimates concerning the dwelling.

As to the estimate of the worth of the contents, Nationwide did dispute Ms. Weidner's estimate as to phonograph records. Pl.Ex. 6, p. 21, line 313. At trial, Ms. Weidner testified that this line item was incorrect and that it should have read "5" rather than "45" boxes of records at $450 each, for a total of $2,250.00, decreasing the total value of the contents by $18,000.[6]

---

**6.** This correction reduces Nationwide's estimate by $18,000.00, bringing the Actual Cash Value estimate to $41,659.35, and the Replacement Cost Value estimate to $71,040.36. *See* Doc. 122, at p. 1–2; Pl.Ex. 6, at p. 1190, 1203.

Based on all of the evidence and the reasons stated on the record, the court finds:

(1) The Actual Cash Value (ACV) of the dwelling is $174,153.18.

(2) The depreciation on the dwelling is $7,737.25, so the Replacement Cost Value is $181,890.43.

(3) The deductible on the dwelling is $2,028.00.

(4) The Actual Cash Value of the contents is $41,659.35.

(5) The depreciation on the contents is $29,381.01, and the Replacement Cost Value is $71,040.36.

(6) Nationwide has already paid $8,000.00 to Plaintiffs under Plaintiffs' contents coverage. The parties stipulated that this payment shall be a credit towards Plaintiffs' recovery in this case, if any. [Doc. 101, p. 4].

(7) Were Ms. Weidner entitled to damages under the policy, Ms. Weidner would be limited to her one-half undivided interest in the property, an amount totaling $86,062.59 for the dwelling and $16,829.68 for the contents.

## CONCLUSION

In sum, based on all of the evidence admitted at trial, the findings of fact set out above, and the reasons set out on the record, the court concludes that the "Concealment or Fraud" provision precludes coverage as to *both* Ms. Weidner and Mr. Dickerson.

**So ordered.**